## RIGGS v. WHITAKER.

130  327
f155  ²308

1. HUSBAND AND WIFE—FRAUDULENT CONVEYANCES.
   In a suit by a trustee in bankruptcy against the debtor and his wife to set aside a deed to her as fraudulent, it appeared that, while in debt, he had sold certain lands, and soon after conveyed a large amount of real estate to his wife, which was largely in excess of the value of her interest in the lands sold. At the time she did not consider or pass any judgment upon the value of her interest in the lands sold, though she knew that her husband was largely in debt. *Held*, that the deed could not be sustained on the ground that it was given as the consideration of her joining in the conveyance of the lands sold.

2. SAME—EVIDENCE.
   In a suit against husband and wife, the testimony of the husband, given in another suit, is incompetent against the wife.

3. EVIDENCE — INSOLVENCY — OFFICER'S RETURN — INVALID JUDGMENT.
   An officer's return of *nulla bona* to an execution fair on its face is evidence tending to show the insolvency of the debtor, even if the judgment upon which it was issued might not have proven valid had some one seen fit to attack it.

Appeal from Wayne;· Donovan, J. Submitted February 20, 1902. (Docket No. 120.) Decided April 8, 1902.

Bill by Frank J. Riggs, trustee of the estate of George H. Whitaker, bankrupt, against Sarah F. Whitaker and George H. Whitaker, to reach property alleged to have been transferred in fraud of creditors. From a decree for complainant, defendant Sarah F. Whitaker appeals. Affirmed.

*M. J. Lehmann* (*Keena & Lightner* and *Walter E. Oxtoby*, of counsel ), for complainant.

*Graves & Hatch*, for appellant.

MONTGOMERY, J.  The bill was filed in this case by
Frank J. Riggs, as trustee in bankruptcy of George H.
Whitaker, to reach certain property standing in the name
of Sarah F. Whitaker, wife of George H. Whitaker,
alleged to have been transferred to her in fraud of credi-
tors, and to reach the proceeds of certain other property
which had been conveyed to her, but the title of which
has passed out of her hands.  The circuit judge granted
the relief prayed, and ·defendant Sarah F. Whitaker
appeals.

The testimony of George H. Whitaker, given on the
trial of the case of Luitje against Whitaker, was received
in evidence.  We think this testimony was incompetent
as against Sarah F. Whitaker.  See *Blanchard* v. *Moors*,
85 Mich. 380 (48 N. W. 542); *Whelpley* v. *Stoughton*,
119 Mich. 314 (78 N. W. 137).  The case will be deter-
mined, therefore, without reference to the testimony given
by Mr. Whitaker.

The testimony shows that in 1897· George H. Whitaker
was the owner of a terrace of dwelling houses on Second
avenue, in Detroit, of the value of about $50,000.  This
property was covered by three mortgages,—one of $25,000,
one of $4,000,·and one of $3,500, making a total of $32,500.
Whitaker was also owner of a house and lot on Second
avenue, in Detroit, valued by witnesses at from $7,000 to
$14,000, but probably worth, as near as we can judge, about
$10,000.  Whitaker effected a sale of the terrace property
to P. A. Ducey.  The evidence is not quite clear as to
what was realized upon this property.  The value of the
equity, as shown by the record, was about $17,500.  But
it is certain that Mr. Whitaker received a deed for 12 lots
in Wesson & Ingersoll's addition to Detroit; also a contract
to transfer 24 lots in the same location, worth, according
to the estimate, $7,200, with $5,000 against them, or $2,200
net.  The testimony is not clear, although it is claimed by
the defense to show that he received also about $6,000 in
money.

There is no doubt upon this record that Mr. Whitaker

was indebted in large sums at this time; nor is there any doubt in our minds that he was insolvent. Many technical questions are raised as to the character of the testimony offered to show the insolvency of Mr. Whitaker. Among others, it was shown that an execution was returned *nulla bona,*—an execution regular on its face. But it is sought to break the force of this return by raising technical objections to the judgment upon which the execution issued. The evidence of the officer's return implies, however, an effort on his part to make the amount of the judgment, under a writ valid upon its face; and the value of this evidence is not detracted from by a discovery, made by counsel years afterwards, that, had somebody seen fit to attack the judgment, it might not have proven valid.

Nor is there any doubt that Mrs. Whitaker knew of her husband's indebtedness. She testified as follows:

"I never gave the debts very much thought at all. I thought it was paying pretty well, and I hated to have him sell it. I never knew anything about Mr. Whitaker's business at all. When I thought about it, I knew that Mr. Whitaker was dealing with these men, and was largely in debt."

It appears that, with this knowledge of her husband's affairs, Mrs. Whitaker claims that an agreement was made, at the time she joined in the deed of the terrace to Ducey, that she should receive, in consideration of so joining in the deed, a deed of the house and lot on Second avenue, the equity in which was, say, $5,000, and the 12 lots received by him from Ducey, in Wesson & Ingersoll's addition to Detroit. Four of these lots were afterwards conveyed to Mr. Gavett in exchange for a cottage. The Gavett cottage, the Second-avenue property, and the remaining lots were deeded to Mrs. Whitaker. She claims that this conveyance was made in consideration of her joining in the deed. She testifies as follows:

" *Q.* What do you understand to be your dower in the property ?

"*A.* I never gave any attention to it. I don't know what it means. I supposed that it meant one-third.

"*Q.* You did not have any idea what it meant, or what its value was?

"*A.* I didn't think anything about it. If he sold the terrace, I wanted him to give me a certain amount.

"*Q.* Without any regard to your dower right? That you have not in mind?

"*A.* No, I never thought anything about my dower interest.

"*Q.* Now, why, if you were to have these lots about the time that the deal was made with Ducey, for signing the deed to him, why didn't you have them?

"*A.* I don't remember whether he did deed them right to me right away or not. That was his business. I paid no attention to it. I would have to look up when they were deeded to me. But I always trusted Mr. Whitaker. He never deceived me, and, if he said that he would do it, I never had to bother my head about it after that."

On the trial before Judge Rohnert she testified:

"*Q.* What do you understand to be your dower in the property?

"*A.* I gave no attention to it. I did not know what it means. I suppose it means one-third.

"*Q.* You did not have any idea what it meant, and what its value was?

"*A.* I did not think anything about it. If he sold the terrace, I wanted him to give me a certain amount.

"*Q.* And that is all you had in your mind?

"*A.* Yes, sir; for myself and children.

"*Q.* Without any regard for your dower right, if you had any in mind?

"*A.* No, sir; I never thought anything about my dower interest."

It is insisted that Mrs. Whitaker had the right to make the best bargain she could, and that, if she actually made a contract to deed away what interest she had in this property, in consideration of the conveyance to her of the property involved in this suit, creditors cannot complain. There may be limits within which such a contention could be allowed. But an insolvent debtor must be just before he is generous. In the view we take of this transaction,

it was not in the nature of a bargain at all. It is very evident that Mrs. Whitaker never weighed the value of her interest in the terrace property, or sought to consider it. It is evident that she knew of her husband's indebtedness, if not of his insolvency. As we read the record, both parties doubtless felt that it would be safer to have this property in Mrs. Whitaker's name, and it was placed there. The transaction operated to defeat creditors of their rights, and they have the right to complain.

It is strenuously insisted that the evidence does not show that Mr. Whitaker did not retain sufficient money to pay his indebtedness. But, without reciting the testimony at length, we think it is perfectly manifest that he was insolvent at the time this transfer occurred, and has remained so until the present date.

It is urged that complainant has been guilty of laches. But we think no such laches is shown as cuts off the right to set aside this transaction.

The decree protected the interests of Mrs. Whitaker to the extent of the improvements she had put upon the property, subrogated her to the rights of the mortgagee in the mortgage she had discharged, and protected her homestead right. We think the decree fully protects all her equitable rights, and should be affirmed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.