# CHARLESTON.

STATE v. WEBB HOLESAPPLE.

Submitted October 15, 1918.   Decided October 29, 1918.

1. CRIMINAL LAW—*Identity of Personal Property—Basis of Opinion.*
   As a basis for his opinion as to the identity of items of personal
   property, a witness may show what opportunity he has had of
   previously observing the same.   (p. 28).

2. SAME—*Evidence—Admissibility—General Objection.*
   Evidence competent for any purpose, is properly admitted over
   a general objection thereto.   (p. 28).

Error to Circuit Court, Kanawha County.

Webb Holesapple was convicted of offense under the prohibition law, and he brings error.

*Affirmed.*

*Townsend & Bock* and *Geo. D. Moore,* for plaintiff in error.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for the State.

RITZ, JUDGE:

Upon an indictment charging him with the violation of § 31 of ch. 32a, Barnes' Code, the defendant was by the Intermediate Court of Kanawha county tried, convicted, and sentenced to pay a fine and serve a term of imprisonment, and upon the refusal of the circuit court to grant him relief from the judgment, he prosecutes this writ of error. The facts upon which the conviction is based, as shown by the State, are that in the month of September, 1917, the defendant, between eight and nine o'clock one morning, called a taxicab driver and requested him to go to the residence of the defendant in the city of Charleston, and there get a hand grip and suit case and take the same to Chesapeake & Ohio train No. 3 leaving Charleston for the west at about noon. In accordance with this direction, the taxicab driver did secure the suit case and hand bag and take them to the train as requested. He turned them over to a hotel porter at the

station, who in turn delivered them to Holesapple. Up to this point there is no conflict in the evidence. Holesapple admits having the suit case and hand bag sent to the station, and admits getting them from the hotel porter, and admits leaving Charleston on that train. The taxicab driver further testifies that before he left the station on this occasion Holesapple appeared, and while waiting for the train arranged with him to meet Chesapeake & Ohio train No. 2 east bound, which would arrive in Charleston about seven o'clock that evening, and advised him to have his taxicab at the lower end of the station platform where the Pullman cars stop; and also advised him not to take any other passengers; that he, Holesapple, would want the whole cab. Pursuant to this arrangement, the taxicab driver says he did meet train No. 2 and did place his cab in the position requested by Holesapple, and that when train No. 2 came Holesapple got off the train with his hand grip and placed it in the taxicab; that the Pullman porter got off the train with the suit case and placed it in the taxicab, that Holesapple declined to get in the cab himself, but directed the driver to take the suit case and the hand grip to the place from which they had been secured in the morning, and place them in the room. This, the driver says he started to do, but was stopped by a police officer, and the suit case and the hand bag taken from him. The police officer testifies that he observed Holesapple leaving that day with the suit case and the hand bag, and that he was at the station to meet No. 2 in the evening, expecting that Holesapple would return thereon; that he saw Holesapple get off the passenger train and place the hand bag in the taxicab, and that he also saw the Pullman porter place the suit case therein; that he seized this suit case and this hand bag upon the suspicion that whiskey was being conveyed into the city in the same, and upon an inspection thereof this suspicion was confirmed, it being found that the hand bag contained twenty-five pints of whiskey, and the suit case thirty pints thereof. Holesapple denied making any arrangement with the taxicab driver to meet him upon the arrival of train No. 2; he denied placing the hand bag in the taxicab, or having the suit case placed therein; he denied

that the property was his; he claimed that he went to Ashland on train No. 3 and came back without any baggage. Upon this showing the jury found him guilty of the offense charged.

In this connection it is pertinent to remark that while Holesapple was arrested that same evening, and he claims that his baggage was checked in a hotel in Ashland, he took no steps, although the trial was held sometime afterward, to secure the attendance of witnesses to prove this fact. He says that he went to Ashland very shortly after his arrest, and knowing the charge that was against him it seems a little strange that he would not call the attention of the hotel people to the fact that his suit case and his hand bag were checked, and had been so checked since the previous day when he was there, with a view to enabling them to testify in his defense.

But no complaint is made that the evidence is not sufficient to sustain the conviction. The defendant does, however, insist that the admission of certain evidence was error, and claims that the same was so prejudicial to him that the judgment should be reversed and a new trial granted. When the police officer was testifying he was asked the question whether he had seen Holesapple at the Chesapeake &.Ohio station with a suit case and a grip on other occasions, and over the objection of the defendant testified that he had. The action of the court in permitting this question to be answered is the alleged error relied upon for reversal. It is contended that this was permitting the state to prove another and separate offense against the defendant. We cannot see anything in this contention. Certainly it does not tend to prove an offense against a man who happens to be travelling on a train to show that he has hand baggage with him. No such inference could justifiably be drawn from this evidence. It may be said that the fact that Holesapple had been at the station on other occasions with a suit case and a grip would not have any tendency to prove the substance of the offense charged. It, however, appears when the examination of this witness is all read together, that the purpose of the prosecuting attorney in showing that the witness had seen Holesapple with

the suit case and the grip on other occasions was to show the jury that the witness was sufficiently familiar with them to identify them. One of the issues being tried was the identity of the suit case and the hand bag, and when the examination of this witness is read as a whole it is patent that the purpose of the prosecuting attorney in asking the question, and the court in allowing it to be answered, was to show that the witness was familiar with the hand bag and the suit case carried by Holesapple, in order that his identification of the suit case and the grip taken by him from the taxicab would have a basis upon which to stand. As to the identity of items of personal property, it is proper for a witness to give his opinion, but ordinarily before giving such opinion the witness should be required to state the basis thereof, that is, what opportunities he has had to observe the articles, and any other matter which would make them familiar to him, or would form a basis for any opinion he might have. *State* v. *Hopkirk*, 84 Mo. 278; *Wiggins* v. *Henson*, 68 Ga. 819; *State* v. *Babb*, 76 Mo. 501; *Commonwealth* v. *O'Brien*, 134 Mass. 198; *Morissey* v. *The People*, 11 Mich. 327; *Commonwealth* v. *Best*, 180 Mass. 492. For the purpose of establishing a basis for this witness's opinion as to the identity of the suit case and the grip in question, the evidence, the admission of which is complained of, was pertinent, and the court did not err in overruling a general objection thereto. If the defendant desired to have it limited to the particular purpose for which it was pertinent, he should have made a request to that end.

We find no error in the judgment complained of, and the same will be affirmed.

*Affirmed.*