PEOPLE v WADKINS

Docket No. 43915. Submitted June 5, 1980, at Lansing.—Decided November 4, 1980.

> Jeffrey L. Wadkins was charged with and, following a jury trial, convicted of breaking and entering, Ingham Circuit Court, Michael G. Harrison, J. On the morning of the scheduled day' for trial defense counsel requested an adjournment because of other potential witnesses which counsel might or might not want to call. The motion for adjournment was denied. Defendant's defense was intoxication. On cross-examination, the defense sought to question two police officers regarding statements made by defendant to the officers on the day following his arrest relative to defendant's drinking on the prior day. Defense counsel was not permitted to elicit from the officers the nature of defendant's statements to them. The defense called Patrick Parker, who had been charged as an accomplice of defendant but who was not being tried with defendant. Outside the presence of the jury Patrick Parker asserted his right against self-incrimination and, accordingly, did not testify before the jury. The defense next called Jane Parker, wife of Patrick Parker. On a separate record taken without the jury present, defense counsel inquired as to whether the defendant had been drinking on the day of the crime prior to its commission. During cross-examination by the prosecutor, counsel for Patrick and Jane Parker asserted the husband-wife privilege on behalf of Mr. Parker. The prosecutor objected on the basis that

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 84.
     75 Am Jur 2d, Trial § 30.
[2] 29 Am Jur 2d, Evidence § 621.
[3] 81 Am Jur 2d, Witnesses § 49.
[4] 81 Am Jur 2d, Witnesses §§ 605, 606.
[5] 29 Am Jur 2d, Evidence § 256.
     81 Am Jur 2d, Witnesses §§ 111, 120.
[6] 81 Am Jur 2d, Witnesses §§ 111-115.
[7] 81 Am Jur 2d, Witnesses § 112.
     Spouse as competent witness for or against co-offender with other spouse. 90 ALR2d 648.

his right to cross-examination had been denied and asserted that, under the circumstances, Mrs. Parker should not be permitted to testify before the jury. Defense counsel argued that, since Mrs. Parker's testimony was relevant to defendant's defense of intoxication, she should be permitted to testify. The trial court ruled that, under these circumstances, Mrs. Parker would not be permitted to testify before the jury. Debra Parker, sister of Patrick Parker and defendant's girlfriend, was called by the defense and testified that defendant was drunk on the day of the crime. Another defense witness testified to the same effect. Defendant took the stand and testified that he had consumed large quantities of alcohol the night prior to the crime, that he had lapses of memory relative to the time period prior to his arrest, and that he had no intent to break or enter and no intent to steal anything from the premises upon which he was found. Following conviction on the breaking and entering charge, defendant pled guilty to being a third offender. Defendant appeals. *Held:*

1. The question of the adjournment of trial was one addressed to the discretion of the trial judge. Since the reason urged by defense counsel was equivocal in nature, the Court of Appeals finds no abuse of discretion. Absent a showing of an abuse of discretion by the trial court in its determination to deny the motion for adjournment, the Court of Appeals will not overturn the trial court's decision.

2. Since the statements made to the police officers by the defendant relative to his intoxication on the prior day were self-serving hearsay not within any exception, testimony by the police officers relative to those statements was properly excluded.

3. No reversible error resulted from Patrick Parker's exercise of his right against self-incrimination, since the assertion of that right was made outside the presence of the jury and before he had given any testimony before the jury.

4. The prosecution properly used a prior inconsistent statement made by Debra Parker to the prosecutor for the purpose of impeaching her trial testimony, the prosecution having laid the necessary foundation.

5. Any error resulting from the trial court's permitting the exercise of spousal privilege relative to Jane Parker's testimony and from the court's refusal to permit Mrs. Parker to testify before the jury under those circumstances is harmless error, since her testimony relative to the defendant's state of intoxication prior to the crime was merely cumulative.

6. The Court of Appeals did not address the question of

whether spousal privilege was properly invoked relative to Mrs. Parker's testimony, since both the trial court and the parties assumed that spousal privilege applied under these circumstances and the parties have not addressed on appeal the question of the validity of that assumption.

7. The question of the exercise of spousal privilege, which is a statutorily derived privilege rather than a constitutionally derived privilege, should be considered by a trial court after the making of a separate record outside the presence of the jury. The trial court in determining whether the exercise of a nonconstitutional privilege requires exclusion of all the testimony of a witness exercising the privilege must, upon proper offers of proof by the parties, balance the need of a defendant to elicit testimony in his favor with the need of the prosecution to inquire into privileged areas in order to test the credibility of the witness and should consider the interest of the witness, the relationship of the privileged and nonprivileged areas of testimony and the cumulative nature of the proffered testimony.

Affirmed.

DANHOF, C.J., concurred. He agrees that the exclusion of the testimony excluded under spousal privilege was harmless error since it was cumulative evidence. He, however, would hold that the exercise of spousal privilege was not proper under these circumstances because that privilege runs to the spouse of the defendant on trial; that privilege does not run to the spouse of an accomplice who has been charged but who is not being tried with the defendant.

OPINION OF THE COURT

1. TRIAL — ADJOURNMENT — DISCRETION — APPEAL — ABUSE OF DISCRETION — COURT RULES.

The question of an adjournment of a trial is one addressed to the discretion of the trial judge; the Court of Appeals, in the absence of an abuse of discretion, will not overturn the decision of a trial court to deny a motion to adjourn trial (GCR 1963, 503).

2. CRIMINAL LAW — EVIDENCE — STATEMENTS BY DEFENDANT — HEARSAY — SELF-SERVING STATEMENTS.

Evidence of statements by a criminal defendant made to the police relative to his state of intoxication at a prior time was properly excluded at trial on the basis that such statements were self-serving hearsay not within any exception where the defendant's defense at trial was intoxication.

3. CONSTITUTIONAL LAW — CRIMINAL LAW — WITNESSES — PRIVILEGE.
   The exercising of the privilege against self-incrimination by a defense witness in a criminal trial does not result in reversible error where the assertion of that privilege is made outside the presence of the jury and before that witness has given any testimony before the jury (US Const, Am V).

4. CRIMINAL LAW — WITNESSES — IMPEACHMENT — PRIOR STATEMENT TO THE PROSECUTOR — RULES OF EVIDENCE.
   A prior inconsistent statement made to the prosecution by a defense witness may properly be used by the prosecution to impeach that witness on cross-examination where the prosecution lays the proper foundation (MRE 613[a]).

5. CRIMINAL LAW — EVIDENCE — PRIVILEGE — APPEAL — CUMULATIVE EVIDENCE — HARMLESS ERROR — STATUTES.
   Any error in a trial court's permitting a defense witness in a criminal trial to exercise her spousal privilege to refuse to testify is harmless error where the testimony of that witness would have been cumulative in nature in establishing the defense theory of intoxication of a defendant who was an accomplice of the witness's husband at the time of the charged offense (MCL 600.2162; MSA 27A.2162).

6. WITNESSES — SPOUSAL PRIVILEGE — SEPARATE RECORD — TESTIMONY — EXCLUSION OF TESTIMONY.
   The question of the exercise of spousal privilege, which is a statutorily derived privilege rather than a constitutionally derived privilege, should be considered by a trial court after the making of a separate record outside the presence of the jury; the trial court in determining whether the exercise of a non-constitutional privilege requires exclusion of all the testimony of a witness exercising the privilege must, upon proper offers of proof by the parties, balance the need of a defendant to elicit testimony in his favor with the need of the prosecution to inquire into privileged areas in order to test the credibility of the witness and should consider the interest of the witness, the relationship of the privileged and nonprivileged areas of testimony and the cumulative nature of the proffered testimony.

CONCURRENCE BY DANHOF, C.J.

7. WITNESSES — SPOUSAL PRIVILEGE — STATUTES.
   *The statute disqualifying a person from testifying against his or her spouse except upon the consent of that spouse creates a spousal privilege only with respect to the spouse of one who is on trial; accordingly, spousal privilege may not be asserted by*

*the wife of a person who is a separately charged accomplice but who is not a defendant at the trial at which her testimony is being sought, although spousal privilege could be asserted if such testimony were sought in the separate trial of her husband (MCL 600.2162; MSA 27A.2162).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, and *Charles M. Sibert,* Chief Appellate Attorney, for the people.

*Reid, Reid, Mackay, Emery & DeVine, P.C.,* for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and G. R. CORSIGLIA,* JJ.

G. R. CORSIGLIA, J. The defendant, Jeffrey Lynn Wadkins, was convicted by a jury of breaking and entering a building in violation of MCL 750.110; MSA 28.305. Subsequently he pled guilty to a supplemental information charging him as a third offender under MCL 769.11; MSA 28.1083. He was sentenced to 5 to 20 years in prison. He appeals as of right.

On the morning of the day set for trial, after the jury had been called and the witnesses had been subpoenaed, the defendant's attorney requested an adjournment. He argued "that there are still other potential witnesses that I might or might not want to call". Defense counsel had been substituted five days prior to trial due to communication problems which had developed between the defendant and his previously appointed counsel. The trial judge denied the motion for an adjournment.

The trial judge based his decision on the timing of the request, its equivocal nature, and the power

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of the court (offered to the defendant) to subpoena any additional witnesses that he might wish to call. Denial of an adjournment is within the discretion of a trial judge. Absent an abuse of discretion, this Court will not overturn such a decision. GCR 1963, 503. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1972), *People v Parker,* 76 Mich App 432; 257 NW2d 109 (1977). No abuse of discretion is evident in this case.

Testimony at trial indicated that sometime between 3 p.m. Saturday, September 16, 1978, and the following Monday morning, the Auto Salvage Company in Lansing, Michigan, was broken into and certain tools were stolen.

Richard Gearhart, a Lansing City Police Officer, testified that on September 17, 1978, at 6 p.m. he answered a silent alarm at the Auto Salvage Company. He stated that when he arrived, he observed an individual crawling from a window of a barn on the property. He further testified that although he ordered him to freeze, the person was able to get out of the window and run from him. Officer Gearhart testified that he ordered the person to "stop or I'll shoot" and when the person appeared to point a gun-like object at the officer, he fired one round, the person dropped to the ground, then got up and ran to a wooded area. Officer Gearhart testified that he heard a car door slam, and he approached the defendant's car, ordered him out, and arrested him. He stated that the defendant did not appear intoxicated.

The defendant's case was based on a defense of intoxication. Attempts to cross-examine two officers of the Lansing Police Department regarding statements made the next day by the defendant at the city jail regarding his drinking the prior day were properly excluded as self-serving hearsay not

qualifying under any exception. See *People v Perryman,* 89 Mich App 516; 280 NW2d 579 (1979).

The officer who frisked the defendant after Officer Gearhart arrested him testified that he found no odor of alcohol on the defendant, nor did he observe other indications of intoxication.

Out of the presence of the jury, the defendant called Patrick Parker to the stand as his first witness. Mr. Parker was a charged accomplice in the case. He asserted his Fifth Amendment privilege not to testify. Since this privilege was properly asserted out of the presence of the jury, no reversible error occurred. *People v Giacalone,* 399 Mich 642; 250 NW2d 492 (1977). The defendant then called, still out of the presence of the jury, Jane Parker, Patrick Parker's wife. The Court was informed that she "may assert a husband-wife privilege". Mrs. Parker testified on direct examination that the defendant was drunk about 2:30 in the afternoon on September 17. The last time she saw him, according to her testimony, was at approximately 3:30 p.m. and that he was drinking at that time.

When the prosecutor attempted to cross-examine her regarding the activities of her husband on the afternoon in question, her attorney (who also represented her husband) asserted the "spousal privilege" on her husband's behalf, and with her apparent consent. The following colloquy occurred:

"*Q. [by Mr. Edwards, the prosecutor]* Approximately three o'clock, isn't it true, that your husband was working on a Datsun?

"MR. DEITRICK *[attorney for the Parkers]:* Your Honor, at this time on behalf of her husband, Pat Parker, we would assert the husband-wife privilege with regard to any questions which might relate to

what Mrs. Parker observed her husband doing that afternoon.

"MR. EDWARDS: Your Honor, I have told Mr. Deitrick and Mr. Oesterle before that I agreed that Mr. Parker has a marital privilege, and merely because he is not the Defendant in this matter does not prohibit him from exercising marital privilege. My objection goes to the fact that what, in effect, is occuring (sic) is that the Defense calling a witness who will answer questions for him, but then when we get into areas that I believe to be relevant and material to the case will refuse to answer those questions based upon the invocation of the marital privilege, thus denying me a right to cross-examine.

\*   \*   \*

"MR. OESTERLE [attorney for defendant]: Your Honor, Miss Parker's testimony in this matter is clearly relevant, and it is clearly essential for the Defense in this matter. Mr. Edwards would have the right to cross-examine Miss Parker on anything relating to the intoxication until such time as the husband-wife privilege is invoked. Until we know how far that is going to go, I think her testimony can go in front of the Jury.

"THE COURT: Well, Mr. Oesterle, what if we take a situation, you know, if they were working on a car together, and the ability of Mr.—the Defendant—to work on the car with this other person, her observations of them working together, if they got in the car and left—and as an example, if the Defendant was driving, there is a tremendous amount of information here which certainly could be very germane to the condition of the Defendant which would be totally cut off by this type of approach.

"MR. EDWARDS: Your Honor, in the examination of the statute, it seems as though there is a right to invoke privilege, but it doesn't seem to say that you can pick and choose where it comes in. If you are going to invoke the privilege, you are going to invoke the privilege. If he invokes the privilege, it would appear as though the witness may not testify, and that he is invoking the privilege."

Further argument was heard by the court, and authorities were considered over a brief recess.

The court then ruled that Jane Parker would not be permitted to testify before the jury on any matters. No further record was made to determine the extent of the conflict between the areas into which the prosecution sought to inquire and the asserted privilege. The trial judge stated:

"The Court is of the opinion that the Prosecutor, as well as Defense, the Defendant, is entitled to proper and thorough cross-examination to the extent that the cross-examination is for all practical purposes made ineffectual by the lack of the opportunity to fully examine a witness. Either party is deprived of their right. Certainly a very crucial witness in any trial. In this case it can—the prosecutor has distinguished from certain other cases. The Court is of the opinion that if we take the approach that the person may testify and then the testimony is to be stricken, is virtually saying to the Jury you may hear all of the evidence. There is no way that they can strike it from their minds. So that the Court is of the opinion that the witness should not be permitted to testify at all if they are going to assert a privilege such as that which has been asserted in this particular matter."

Subsequently, the defendant introduced testimony before the jury to support his defense of intoxication. Vicki Bishop, a bartender at Elk's Lodge, testified that the defendant drank about a fifth of vodka in a gallon of Bloody Marys at a bartender's meeting on September 17, and that he was drunk.

Debra Parker, Patrick's sister and the defendant's girlfriend, testified that the defendant had been drunk the night of September 16, and was drunk on September 17 in the afternoon. During cross-examination, after laying a proper founda-

tion, the prosecutor used a prior inconsistent statement made by Ms. Parker to him in an attempt to impeach her credibility. This was permissible cross-examination. MRE 613(a).

The defendant testified that he was an alcoholic or had a serious drinking problem, that he drank Bloody Marys at the bartender's meeting, and that the next thing that he remembered is Debra Parker waking him while he was sleeping in a car. He also testified that he did not intend to break and enter into the Auto Salvage Company, and that he did not intend to steal.

The Court has carefully examined the record in this case, the briefs filed and the supplemental briefs on appeal. The errors raised by the defendant do not merit reversal. We specifically find that the exclusion of the testimony of Jane Parker by the trial judge was harmless error beyond a reasonable doubt because of the cumulative nature of her proffered testimony. The mere number of witnesses presented for a party on an issue is irrelevant in determining where the truth lies. *People v Hagle,* 67 Mich App 608, 617; 242 NW2d 27 (1976). It is clear that testimony by one additional witness on the subject of the defendant's intoxication between 2:30 and 3:30 p.m. on the date in question would not make the defense any more credible.

However, although we find exclusion of the testimony of the witness to be harmless error in this case, we note the need to follow certain procedures to insure that an adequate balance is made between the right of a defendant to present a witness on his behalf and the necessity, in the interest of justice, for a full and fair cross-examination of a witness to ascertain credibility. In the instant case, the trial judge did not establish facts on the

record offered by both parties upon which to base a decision to exclude the testimony of Jane Parker in total.

As a preliminary comment, we note that both the trial judge and the parties made the assumption that the spousal privilege was properly invoked in this proceeding, although the witness's husband was not on trial. This issue has not been raised on appeal by the parties, and we do not address the validity of the assumption here. See Anno, 90 ALR2d 648, §§ 9-10, pp 663-668, *Morrissey v People,* 11 Mich 327 (1863).

In Michigan, for well over a century, the spousal privilege has been controlled by statute. The statute today states in relevant part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, * * * nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage." MCL 600.2162; MSA 27A.2162.

It should be noted that two common law privileges are incorporated into the Michigan statute. The "confidential communications privilege" applies, irrespective of the marital status of the parties at the time of the suit, to confidential communications made within the marital relationship. The "spousal privilege", germane to the instant case, applies to any testimony of a spouse without the consent of the other so long as the parties continue to be legally married at the time of suit. Neither the statute nor Michigan case law limits the scope of the spousal privilege to criminal prosecutions.

Although longstanding in the law, the spousal

privilege has no constitutional foundation. Its underpinnings are historical, and upon close inspection, many girders are missing. Recently, the United States Supreme Court addressed the scope of the common law spousal privilege in the Federal courts. In *Trammel v United States,* 445 US 40; 100 S Ct 906; 63 L Ed 2d 186 (1980), the Federal rule was significantly narrowed. The Court held that the privilege against adverse testimony vested in the testifying spouse alone. If a spouse chose to testify for or against her mate, the objection of her husband would not make such testimony incompetent. (Here, as throughout this discussion, gender of the parties should be considered interchangeable. For purposes of convenience, we will refer to the parties in their respective positions in this case.)

The specific language of the Michigan statute may preclude a similar result to that reached in *Trammel* since the statute appears to vest the right to consent specifically in the nontestifying spouse. However, such a construction is not compelled in the instant case, since the record, fairly read, does not give any indication that the witness desired to testify against the wishes of her husband.

The spousal privilege in Michigan, like the modern common law privilege, is narrow in its justification and ought to be correspondingly narrowly construed in its scope. Analysis of the historical bases which remain valid under modern rules of evidence and procedures provides a framework for application of the statutory privilege in cases such as the one at bar.

The modern justification for the spousal privilege is preservation of marital harmony. Historically its foundation was laid upon the incapacity of

the defendant to testify on his own behalf, and the unity of the husband and wife as one person in marriage. See *People v Zabijak,* 285 Mich 164, 175-176; 280 NW 149 (1938). Absolute disqualification was the norm at common law. However, both in Federal courts and in Michigan for many years the spouse of a defendant has been permitted to testify for her husband. *Funk v United States,* 290 US 371; 54 S Ct 212; 78 L Ed 369 (1933). Necessity has incorporated numerous other exceptions to the general rule and into the statute as well.

The narrow justification for the spousal privilege must be measured against the right of a defendant to elicit testimony in his favor. The trial court proceeded correctly in considering the privilege out of the presence of the jury. See *People v Giacalone, supra,* 646, *People v Trine,* 164 Mich 1; 129 NW 3 (1910). A record of the direct testimony offered on behalf of the defendant was elicited in order to ascertain the necessity for testimony by the witness.

However, when the "husband-wife privilege" was asserted upon cross-examination, the court did not examine the specific contested areas of questioning in order to ascertain the scope of the prosecution's need to inquire into "privileged" areas in order to test credibility. In the face of a bold statement by the prosecution that it needed to inquire into privileged areas to test credibility, and without requiring an offer of proof, the court proposed a hypothetical conflict situation and completely excluded the entire testimony of the witness. Fortunately, in the instant case the testimony was entirely cumulative, and reversal is not required. However, a careful and thorough analysis of the specific facts and areas of conflict ought to be done prior to any future blanket exclusion of a witness's testimony in a similar case.

Certain factors may be taken into consideration by the trial court in making an evaluation based upon the record. By means of an inquiry into the specific areas of conflict through offers of proof by both parties, to-wit: by direct examination, and by cross-examination by the prosecution through specific questions to which the witness responds by either asserting a privilege or answering without trespassing into a privileged area, a trial judge will have a sufficient basis on the record to make an evaluation of the need for the testimony in light of the asserted privilege. *People v Davis,* 91 Mich App 434; 283 NW2d 768 (1979). Such factors as the cumulative nature of the testimony, the interest of the witness such that there is the need to inquire into credibility, and the intertwined nature of the privileged areas in time, place and manner with the nonprivileged areas of testimony, are relevant factors for the trial court to consider. We do not mean to place the husband/wife statutory privilege on the same plane for purposes of analysis as the Fifth Amendment privilege against self-incrimination. Its historical justification is narrow, and it is without a similar constitutional foundation. This factor can also be taken into account by a trial judge when confronted by a situation such as that in the instant case.

Since the record of the direct testimony offered by the defendant here clearly indicates its cumulative nature, reversible error did not occur.

Affirmed.

M. J. KELLY, J., concurred.

DANHOF, C.J. *(concurring).* I concur in the result reached by the majority; but I am writing a separate opinion because I believe this Court should

address the applicability of the spousal privilege in this action. If this Court fails to address this issue we are, in effect, allowing the parties to change the law as it applies to the case by agreeing that a statute applies to the case when in fact it does not.

MCL 600.2162; MSA 27A.2162 provides, in relevant part:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, * * * nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage."

The latter aspect of the spousal privilege, relating to marital communications, is clearly inapplicable on these facts because Jane Parker would have testified as to the activities of her husband, not any communications from him. The former privilege prevents Jane Parker from testifying *against* her husband. Since Patrick Parker was not a defendant in this action (although he was a separately charged accomplice), Jane Parker would not be testifying against her husband. Her husband would be able to assert the spousal privilege if the prosecution attempted to use her testimony against him in the separate trial. See *Riggs v Whitaker,* 130 Mich 327; 89 NW 954 (1902).

Thus, I would hold that the trial court erred in excluding Jane Parker's testimony because the spousal privilege is inapplicable to this case. However, I agree with the majority that the exclusion of her testimony was harmless beyond a reasonable doubt because the proffered testimony was cumulative.