PEOPLE v BURSE

1. CRIMINAL LAW—TRIAL—MOTION TO DISMISS—EVIDENCE—INFER-
ENCE—ELEMENTS.

A motion to dismiss charges against a criminal defendant will not
be granted where there is evidence, real or circumstantial,
from which a jury can reasonably infer all of the elements of
the crime charged.

2. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—RECORD—DISCRE-
TION—REBUTTAL—TESTIMONY.

Permitting reference at trial to the defendant's prior conviction
record was proper where the defendant had stated on direct
examination that he had never been convicted of a crime,
which opened the door for the people to show that this testi-
mony was not true, and where the record sufficiently indicated
that the trial court had exercised its discretion to exclude prior
conviction evidence.

3. CRIMINAL LAW—EVIDENCE—PRIOR CONVICTIONS—MISDEMEANORS—
IMPEACHMENT—STATUTES—PROSPECTIVE APPLICATION.

The Supreme Court decision that misdemeanors and municipal
ordinance violations are not admissible solely for impeachment
purposes, under a statute which expressly permits impeach-
ment of a defendant by introduction of his prior convictions, is
of prospective force only (MCLA 600.2159.)

Appeal from Wayne, Charles Kaufman, J. Sub-
mitted Division 1 March 5, 1975, at Grand Rapids.
(Docket No. 18972.) Decided June 23, 1975.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 226.
Conviction of criminal offense without evidence as denial of due
process of law. 80 ALR2d 1362.
[2] 58 Am Jur, Witnesses § 685 *et seq.*
29 Am Jur 2d, Evidence § 320 *et seq.*
75 Am Jur 2d, Trial § 269.
[3] 20 Am Jur 2d, Courts § 233 *et seq.*

Tyrone Burse was convicted of entering, without breaking, a business place with intent to commit larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *James M. Wouczyna,* Assistant Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant on appeal.

Before: D. E. HOLBROOK, P. J., and BRONSON and M. J. KELLY, JJ.

D. E. HOLBROOK, P. J. Defendant was charged, along with two codefendants, with committing, on May 8, 1973, the offense of breaking and entering a business place with intent to commit larceny, contrary to MCLA 750.110; MSA 28.305. He was convicted by jury in a joint trial with one of the codefendants of entering without breaking with intent to commit larceny. MCLA 750.111; MSA 28.306.

The manager of a supermarket, which the defendant and his codefendants allegedly broke into, testified that on the night of May 7, 1973, at approximately 10 p.m. he locked the doors. The interior of the store and the various displays were in proper order that night. The glass on the doors (two outer doors and two inner doors) was intact. He never gave anyone permission to enter the store after business hours, in particular, he never gave the defendants permission to go into the store.

At about 3 a.m. on the morning of the eighth, the manager received a telephone call from the

Dearborn Heights Police Department informing him that the supermarket had been burglarized. When he arrived at the scene, he observed that the exit doors were smashed, glass was spread throughout the vestibule inside the store, and cartons of cigarettes were inside the immediate entrance. In addition to this, he found cartons of cigarettes thrown in a box which had been moved. The cigarette display itself was discovered torn apart.

The people called an employee of the Detroit Free Press. He testified that during the early morning hours of May 8th, he was in the supermarket area, which was his pickup point for the newspapers. He noticed a car near the store with one person inside it, and observed another person inside the store. The car he was observing backed around to the other side of the store and as it was backing up he heard the "crunching" of glass, as if someone or some object was driving or walking over glass. The car left the driveway and he followed it. While he phoned the police department, he observed the car, a blue Ford convertible with a dark blue top, noted the license number of the car and reported it to the police.

An officer of the Dearborn Heights Police Department testified that on the morning of May 8, 1973, at approximately 3:15 a.m., he and his partner received a call to go to the supermarket in question. When he arrived at the location, he observed a three-by-five-foot glass pane broken out of the first door going into the vestibule, and a pane approximately the same size broken out going into the store. A large cardboard box was in the vestibule, and a large quantity of cigarette cartons was on the floor. As he entered the building through the broken door pane, he found a

cardboard box inside the building with cigarette cartons in it. He also found a few cartons near the cigarette display case which had been ransacked.

A patrolman testified that at approximately 3:27 a.m. on May 8, he received a "be on the lookout" call for a certain Ford convertible, *viz.,* dark blue top, light blue bottom, license number KMB 983. In the course of his patrol, he observed a vehicle with the same license number and description approximately six to seven minutes after the call. The patrolman identified defendant, Tyrone Burse, also known as Ozil Clifford Brazil and Larry Sims, and his codefendant, Quincy Harris, and a third person named Sims who was not present at the trial, as the persons in the car which he stopped. All three were arrested. The patrolman, himself, participated in the booking and registering of the men and identified people's proposed exhibit 1 (a set of cards with ink impressions) as the finger-prints and palm prints he had taken of defendant Burse.

Another officer testified that on that morning, three persons who had been arrested for breaking and entering were brought into the police station. He specifically searched defendant Harris and dis-covered minute particles of glass on the inside cuff of the right pant leg. The officer identified people's proposed exhibit 2 as the packet containing those same particles of glass. He also identified some of the glass particles taken from the right and left shoes.

An employee of the Department of State Police, latent fingerprint unit, testified that people's ex-hibit 1 was a Department of State Police record and identification fingerprint card of defendant, Tyrone Burse. He also testified that after compar-ing the latent prints taken at the scene of the

crime, people's exhibits 4-A and 4-B, to the known prints on people's exhibit 1, his opinion was that the latent print on card 4-B was made by the right thumb of defendant, Tyrone Burse, and those on card 4-A were made by his left middle finger.

Another expert, who was assigned to the State Police Scientific Laboratory in Plymouth, Michigan, testified that after being presented by the Dearborn Heights police with known particles of glass from the store, and particles of glass taken from one of the defendants, his opinion was that the glass contained the same optical properties and they probably had a common origin.

Defendant took the stand on his own behalf. He testified that in the early morning hours on May 8, he was on his way to a cousin's house in Inkster with two friends, James Sims and Quincy Harris, for a party. On their way, defendant stated, the three of them lost their way, so Jimmy Sims got out of the car and telephoned defendant's grandmother for directions to the cousin's house from the phone booth located within the parking lot of the shopping center where the offense here in question occurred. Defendant indicated that while he and Harris were in the car, and Jimmy Sims was making the call, he heard glass breaking and then saw individuals get into a car and drive away. He also stated that both he and Mr. Harris got out of the car and walked up to the store window; that he proceeded to walk inside the store; and that as he entered the door, a jagged piece of glass almost fell on top of him. They both stepped away from the glass, and defendant Harris went back to the car. While defendant was inside the store he saw some cartons of cigarettes. He picked up a couple of cartons of cigarettes. Harris said, "The car's coming back again." This time

they saw it back into the parking lot with the trunk open. Defendant Burse and the others assumed that it contained the same people who broke into the store earlier. Burse then threw down the cigarettes, and all three drove off. As they were leaving, they noticed a man in the telephone booth.

Defendant's trial counsel asked him on direct examination: "Now, will you tell the jury, first of all, have you ever been convicted of any crimes?" Defendant responded: "No, I haven't." Defendant also testified on cross-examination that if no alarm had been sounded, he might have walked out with a couple of cartons of cigarettes he had picked up in the store.

At the close of the prosecution's case, defendant moved for dismissal of the charge against him, on the grounds that the people had introduced no proofs of either breaking or asportation. The trial court denied this motion, saying:

"I am satisfied there is a factual question. As far as the breaking is concerned, there was evidence of glass in the pant cuff which, I think, could indicate to the jury that this is the man that broke the glass. If you are just walking in on some broken glass, and this is a factual matter, one may not get it in his cuff. So I think that there is sufficient for the jury to make a determination on rather than the court making a determination as a matter of law, so I will deny the motion."

The trial court ordered a separate record made on the question. The trial court permitted, over defendant's objections, the prosecutor to cross-examine defendant on a previous conviction under a different name for the purposes of impeaching defendant's credibility, and also, as to different names, for purposes of identification. On October

11, 1973, the trial court sentenced defendant to a term of 2-1/2 to 5 years in prison. Defendant appeals as of right and sets out three issues.

I

*Whether the trial court erred in denying defendant's motion to dismiss at the conclusion of the people's proofs?*

In *People v Moore,* 51 Mich App 48, 53; 214 NW2d 548, 550–551 (1974), this Court reaffirmed that:

"The question presented by a motion to dismiss is whether there is evidence, real or circumstantial, from which a jury can reasonably infer all the elements of the crime charged. *People v Compton,* 23 Mich App 42; 178 NW2d 133 (1970); *People v Compian,* 38 Mich App 289; 196 NW2d 353 (1972). See, also, *People v Crown,* 33 Mich App 266; 189 NW2d 810 (1971); *People v Brown,* 42 Mich App 608; 202 NW2d 493 (1972)."

In the instant case, the store manager testified that when he had secured the store in question, everything had been in order, and all entrances and exits had been locked, and further stated that he had given no one permission to enter the store after he locked up. The people then introduced the testimony of the Free Press employee to the effect that he had seen the convertible with a dark blue top and light blue bottom near the store in the early morning hours of May 8, 1973, and had seen one person inside the store and one person in the car and heard the sound of "crunching" glass.

Without reiterating the proofs, we conclude there was adequate evidence to sustain the trial court in its denial of the motion. A similar claim was presented in the case of *People v Garrett,* 17

Mich App 69, 71–72; 169 NW2d 143, 144 (1969), where it was said:

"Defendant contends that the trial court committed error in denying his motion to dismiss because no one saw him break into the store nor were his fingerprints found at the scene. There was, however, evidence that the store was broken into. The garage door had been used to gain access and the window closest to the lock had been broken. Defendant was admittedly present at the scene and there was testimony that the overhead door through which the defendant entered had been pulled down again before the police arrived. There was a question of fact for the jury as to whether defendant broke and entered the store. The trial court properly denied defendant's motion to dismiss."

*Cf. People v Palmer,* 42 Mich App 549, 551–552; 202 NW2d 536, 538 (1972), and *People v Lambo,* 8 Mich App 320, 323; 154 NW2d 583, 584 (1967).

## II

*Whether the trial judge abused his discretion in permitting reference to defendant's prior conviction record?*

As to this issue the following occurred:

"*The Court:* I am going to, of course, *permit* the prosecution to show a prior conviction.

"*Mr. Curtis (defense attorney):* Now, your Honor—

"*The Court:* I know it is a misdemeanor but even under [MCLA 768.27] MSA 28.1050 it *may* be admissible for one thing and misdemeanors are admissible also for impeachment purposes if it is the type of misdemeanor which would go to show credibility.

"*Mr. Curtis:* I object on two grounds. Number one, I think the earlier conviction of the misdemeanor would be *so remote* in time as not to show a pattern of conduct.

"*The Court:* We are talking about *nine months* ago.

"*Mr. Curtis:* Secondly, as to credibility, you can't bring up the subject of a misdemeanor.

"*Mr. McMahon (assistant prosecutor):* That's not the law. It just simply isn't the law.

"*The Court:* I will rule that I am going to *permit* him to bring in the former misdemeanor conviction on the question of credibility and the question of the other names, I will have *to permit that.* It has to do with identification.

"*Mr. McMahon:* Also, it has to do with credibility.

"*The Court:* Yes.

"*Mr. McMahon:* He has sworn his name was Tyrone Burse.

"*The Court:* Yes, I will *permit* that." (Emphasis supplied.)

This passage readily reveals that the trial court did, in fact, exercise its discretion. Thus, there has been no contravention of the holdings of *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), or *People v Osteen,* 46 Mich App 409; 208 NW2d 198 (1973), *lv den* 390 Mich 760 (1973). Further, the defendant did testify. See *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967), cited in *Jackson, supra,* at 333; 217 NW2d at 25, and, generally, *People v McCartney,* 60 Mich App 620; 231 NW2d 472 (1975). Moreover, we are of the opinion that the trial court sufficiently indicated and identified its exercise of discretion. See *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974). Also, defendant had been asked on direct examination if he had ever been convicted of a crime, to which he replied in the negative. This opened the door for the people to show that his testimony was not true.

## III

*Whether the rule allowing impeachment of a*

*criminal defendant by his prior convictions should
be abolished?*

MCLA 600.2159; MSA 27A.2159 expressly per-
mits impeachment of a defendant by introduction
of his prior convictions. See generally, *People v
Farrar,* 36 Mich App 294, 300 *et seq.;* 193 NW2d
363, 366 *et seq.* (1971). On the grounds presented,
we are loath to be able to disavow this procedure.
The Supreme Court has held that misdemeanors
and municipal ordinance violations are not admis-
sible solely for impeachment purposes. *People v
Renno,* 392 Mich 45, 55; 219 NW2d 422, 425 (1974).
This, however, is of no solace to defendant as he
was convicted on August 2, 1973, *Renno* was de-
cided on June 25, 1974, and has been held to be
not retroactive. See *People v Alphus Harris,* 56
Mich App 517, 528–529; 224 NW2d 680 (1974).
Also this cross-examination was permissible to
refute defendant's assertion of no criminal convic-
tion.

Affirmed.

Judge BRONSON concurs in result.