PEOPLE v ARMENTERO

Docket No. 78594. Submitted July 3, 1985, at Detroit.—Decided January 6, 1986. Leave to appeal applied for.

Defendant, Emilia P. Armentero, was convicted of second-degree murder, Recorder's Court of Detroit, Beverley A. Jasper, J. This was defendant's second trial for this killing. Defendant had been convicted in the first trial but was granted a new trial upon the trial court's finding that defense counsel's failure to assert the marital privilege to prevent defendant's wife from testifying against him constituted ineffective assistance of counsel. Defendant did not testify at the second trial. Certain of his testimony from the first trial was admitted over the objection that the only reason he had testified at the first trial was to rebut the improperly admitted testimony of his wife. On appeal, defendant claimed, among other things, that his prior testimony should have been excluded because it had been prompted by improper admission of his wife's testimony. *Held:*

1. Generally, a defendant's testimony from a prior trial may be admitted at a subsequent trial in the same case. An exception occurs where the defendant's testimony in the first trial was prompted or impelled by the admission of illegal evidence.

2. Evidence is "illegal" for purposes of the exception only where the evidence infringes upon a basic constitutional value or, because of its unreliability, would result in an unfair trial. The testimony of defendant's wife, while it was inadmissible because of the marital privilege, and while it was admitted because of defense counsel's failure to assert the marital privi-

REFERENCES

Am Jur 2d, Evidence §§ 320 *et seq.*, 738 *et seq.*

Am Jur 2d, Judges §§ 181 *et seq.*

Am Jur 2d, Trial §§ 754 *et seq.*

Waiver or loss of right to disqualify judge by participation in proceedings—modern state criminal cases. 27 ALR4th 597.

Disqualification of judge for having decided different case against litigant. 21 ALR3d 1369.

Disqualification of original trial judge to sit on retrial after reversal or mistrial. 6 ALR3d 176.

See also the annotations in the ALR3d/4th Quick Index under Similar Acts and Facts.

lege, was not "illegal" for purposes of the exception because defendant's constitutional rights were not infringed upon. Thus, the fact that his prior testimony was prompted by the testimony of his wife did not preclude admission of his prior testimony at the second trial.

3. The trial court did not err by failing to give the jury cautionary instructions concerning the burden of proof where the prosecutor's case rested entirely on circumstantial evidence.

4. Evidence of defendant's prior assaults on the victim was properly admitted as evidence of motive and identity.

5. Admission of a reference to a prior conviction was in response to defendant's assertion that he had no prior convictions and was, at most, harmless error.

6. The trial judge did not err by not disqualifying herself at the sentencing proceeding and did not exercise her discretion improperly when imposing sentence.

Affirmed.

M. J. KELLY, J., dissented. He would hold that the exception to the rule that a defendant's prior testimony is admissible in a subsequent proceeding should apply to bar admission of that testimony not only where it was prompted by evidence obtained in violation of the defendant's constitutional rights but also were prompted by evidence admitted in violation of those rights. Because the defendant's wife's testimony was admitted in the first trial in violation of defendant's right to effective assistance of counsel, defendant's testimony in rebuttal to his wife's testimony should not have been admitted at the second trial. Judge KELLY would reverse.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — DEFENDANT'S PRIOR TESTIMONY — SECOND TRIAL.

Generally, a defendant's testimony from a prior trial may be admitted at a subsequent trial in the same case on the theory that once the defendant has voluntarily waived his or her privilege against self-incrimination that waiver cannot be revoked in future proceedings in the same case; however, an exception to this rule occurs where the defendant's earlier testimony was prompted or impelled by the admission of illegal evidence.

2. CRIMINAL LAW — EVIDENCE — DEFENDANT'S PRIOR TESTIMONY — SECOND TRIAL.

Evidence which impels a defendant to testify, even if it is technically inadmissible because of general policies of statutory or

common law, will not bar the use of the defendant's testimony at a second trial in the same case unless the improper evidence infringes upon basic constitutional values or presents a situation where the result is likely to rest upon inherently unreliable evidence.

3. CRIMINAL LAW — EVIDENCE — DEFENDANT'S PRIOR TESTIMONY — SPOUSAL PRIVILEGE — ASSISTANCE OF COUNSEL.

The admission, in a second trial, of a defendant's testimony given in the first trial in the same case, is not barred by the fact that the first-trial testimony was presented in response to the improper admission of testimony of the defendant's spouse; the spouse's testimony, while made inadmissible by statute, did not infringe upon a constitutional right nor was it unreliable evidence which would deny the defendant a fair trial; for the same reasons the failure of counsel to object to the admission of the spouse's testimony in the earlier trial does not bar admission of defendant's earlier testimony at the second trial.

4. CRIMINAL LAW — JURY INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE.

A cautionary jury instruction concerning the prosecution's burden of disproving all reasonable theories of innocence when the prosecution's case depends entirely upon circumstantial evidence is necessary only when the circumstantial evidence against the defendant is weak (CJI 4:2:02[6], [7]).

5. CRIMINAL LAW — EVIDENCE — PRIOR BAD ACTS.

Evidence of a defendant's prior bad acts is not admissible to prove the defendant's general character and disposition to commit a crime; such evidence is admissible for the purpose of establishing the defendant's motive or identity (MRE 404[b]).

6. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS.

The grant of a motion to suppress evidence of a defendant's prior convictions is not a license for the defendant to affirmatively present himself before a jury as having a clean record; if the defendant states on direct examination that he has no prior convictions the prosecutor may present evidence to rebut that statement.

7. CRIMINAL LAW — JUDGES — DISQUALIFICATION OF JUDGE.

A defendant seeking disqualification of a judge from sentencing the defendant following a second trial must make a showing of the judge's personal prejudice against him or his counsel; the mere fact that the judge had presided over defendant's first trial does not establish personal bias (GCR 1963, 912.2[a][2], MCR 2.003[B][2]).

DISSENT BY M. J. KELLY, J.

8. CRIMINAL LAW — EVIDENCE — DEFENDANT'S PRIOR TESTIMONY —
SECOND TRIAL.

*A defendant's testimony from a previous trial may not be admit-
ted in a second trial of the same case not only where that
testimony was prompted by evidence obtained in violation of
the defendant's constitutional rights but also where it was
prompted by evidence admitted in violation of those rights.*

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Deputy
Chief, Civil and Appeals, and *Andrea L. Solak,*
Principal Attorney, Appeals, for the people.

State Appellate Defender (by *R. Steven Whalen),*
for defendant on appeal.

Before: BEASLEY, P.J., and J. H. GILLIS and M. J.
KELLY, JJ.

BEASLEY, P.J. In February, 1984, defendant, Emi-
lia Pita Armentero, was convicted by a jury of
murder in the second degree, in violation of MCL
750.317; MSA 28.549. After being sentenced to
serve not less than 75 nor more than 150 years in
prison, he appeals as of right.

This was defendant's second trial for the murder
of Sorrento Bonner-Gabek on July 15, 1981. Bon-
ner-Gabek was discovered in the vicinity of his
upper flat on West Grand Boulevard in Detroit,
stabbed 23 times with two different knives. Bon-
ner-Gabek had been thrown from the window of
his flat after being stabbed.

In the first trial, defendant was tried for murder
in the first degree and convicted by a jury of
murder in the second degree. On appeal, a panel of
this Court remanded the case to the trial court for
an evidentiary hearing to determine whether de-

fendant had been rendered ineffective assistance of counsel at the first trial when his attorney failed to assert his statutory marital privilege at the preliminary examination, thus waiving it for purposes of trial. Docket No. 65638, Order of July 8, 1983 (unreported). On remand, the trial court found that the failure to assert the marital privilege was ineffective assistance of counsel of a level requiring a new trial.

As indicated, on retrial, a second jury convicted defendant of second-degree murder. In a separate nonjury trial, the codefendant, Fidel Fernandez Barrios, was convicted of murder in the first degree, and his conviction was affirmed by a panel of this Court on March 23, 1984 (Docket No. 65698, unreported).

At the second trial, the prosecutor sought to introduce defendant's testimony from the first trial. Defendant objected on the ground that the only reason he had testified in the first trial was to rebut the improperly admitted testimony of his wife. Defendant did not testify at the second trial. The court responded to defendant's objection by excising those portions of his earlier testimony that directly responded to the testimony of his wife, Guadalupe Armentero. The edited testimony was admitted at the second trial and was, for the most part, consistent with defendant's prior statement to the police, which was properly admitted.

Generally, a defendant's testimony from a prior trial may be admitted at a subsequent trial on the theory that once defendant has voluntarily waived his or her privilege against self-incrimination that waiver cannot be revoked in future proceedings in the same case.[1] An exception to this rule occurs where defendant's testimony at the earlier proceeding was prompted or impelled by the admis-

[1] *Harrison v United States,* 392 US 219, 222; 88 S Ct 2008; 20 L Ed 2d 1047 (1968).

sion of illegal evidence.[2] On appeal, defendant
claims that his testimony from the first trial
should have been excluded at the second trial on
the basis of this exception, since that testimony
was prompted or impelled only by the improper
admission of his wife's testimony as part of the
prosecution's case-in-chief.

However, we find that the application of the
holding in *Harrison v United States*[3] to defen-
dant's situation in the within case is inappropri-
ate. Under the facts of this case, defendant's Fifth
Amendment privilege against self-incrimination
was not infringed upon by the admission of his
testimony from the first trial.

Initially, we note that defendant may have given
up his constitutional right to refrain from testify-
ing because his wife's testimony was damaging to
his defense. We also note that defendant's testi-
mony from the first trial was similar, but not
merely cumulative, to the admissible prior state-
ment he had given the police concerning the kill-
ing. But, we do not agree that admission in the
second trial of testimony defendant gave in the
first trial violated his constitutional rights to re-
main silent under the *Harrison* analysis.

To arrive at this conclusion, we distinguish the
type of evidence in *Harrison* from the type of
evidence here, which, as indicated, tended to impel
the defendant's testimony in the first trial. The
*Harrison* Court relied on the general evidentiary
rule that a defendant's testimony at a former trial
is admissible in evidence against him in later
proceedings. The Court then went on to carve out
a narrow exception for testimony impelled from
the introduction of "illegal" evidence, stating:

---

[2] *Id.; People v Gardner,* 122 Mich App 20, 22-24; 329 NW2d 518
(1982), *lv den* 417 Mich 1100.49 (1983); *People v Thompson,* 97 Mich
App 319, 321-323; 293 NW2d 812 (1980).

[3] *Harrison, supra.*

"Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained, and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor." (Footnote omitted.)[4]

The key to applying *Harrison* to situations beyond the illegal confessions evidence category lies in defining what the Court meant by "illegal" evidence which impelled the defendant's testimony. The wrongful confession evidence which impelled the defendant's first trial testimony in *Harrison* was constitutionally illegal under the Fifth Amendment. This type of "illegal" evidence is barred for two general reasons. First, it is barred in order to preserve the basic human dignity value found in the constitutional prohibition against compelled self-incrimination. Second, such evidence is barred in order to assure the reliability of evidence upon which a criminal conviction is based. Wrongfully obtained confessions have not proved to be reliable evidence. Thus, such evidence infringes upon a defendant's right to a fair trial and is considered "illegal".

The application of the *Harrison* exception to the general rule of allowing into evidence a defendant's prior testimony depends upon the existence of evidence which is illegal in one of the two ways described above. The evidence impelling the defendant's prior testimony must infringe upon a basic constitutional value (such as the Fifth Amendment right to be free from being compelled to incriminate oneself), or it must threaten the credibility of the verdict, because of the unreliability of the

[4] 392 US 222.

evidence (such as an unlawfully obtained confession), thus infringing upon the defendant's constitutional right to a fair trial.

By defining "illegal" evidence in this way, the application of the *Harrison* exception is not restricted to situations where police misconduct has produced the evidence that impels defendant's prior testimony. Such a narrow limitation of *Harrison* to the traditional "fruits of the poisonous tree" doctrine is not warranted and is unnecessary for a decision in this case. *Harrison* is only limited to situations where the evidence impelling a defendant's prior testimony is illegal in the sense that it infringes upon basic consititonal values or, to put it another way, upon a defendant's right to a fair trial. Only when evidence is "illegal" in this sense is a defendant's Fifth Amendment right to remain silent infringed upon when he is impelled to testify in response to the admission of the evidence. Evidence which impels a defendant to testify, even though technically inadmissible due to general policies of state statutory or common law, is "legal" evidence for the *Harrison* exception if it does not infringe upon basic constitutional values or present a situation where the result is likely to rest upon inherently unreliable evidence.

The evidence that impelled the within defendant to testify was "legal" evidence for purposes of applying *Harison.* The testimony of defendant's wife at the first trial was inadmissible on two grounds. First, the admission of this evidence violated defendant's statutory spousal privilege.[5] Second, the failure of defendant's counsel to assert the spousal privilege constituted ineffective assistance of counsel under this state's two-prong test

---

[5] MCL 600.2162; MSA 27A.2162.

set forth in *People v Garcia*.[6] Neither of these
flaws render the testimony of defendant's wife
"illegal" evidence for purposes of the *Harrison*
exception.

This Court extensively traced the history of, and
policy behind, the statutory spousal privilege in
*People v Wadkins*.[7] There, the Court noted that
the only modern justification for the spousal privi-
lege is preservation of marital harmony. The *Wad-
kins* Court also found that this underlying justifi-
cation has led federal courts to vest the spousal
privilege only in the testifying spouse. The United
States Supreme Court recently held that, under
federal decisions, if the testifying spouse was will-
ing to testify (as in this case), then there was no
marital harmony to preserve by allowing the de-
fendant spouse to invoke the privilege.[8] Thus, un-
der the common-law spousal privilege followed in
the federal courts, defendant herein could not
have asserted the spousal privilege and barred his
wife's testimony; only she could have invoked the
privilege with respect to her testimony.

However, the *Wadkins* Court also noted that the
language of the Michigan statutory spousal privi-
lege does not allow for adoption of the federal rule.
But, the *Wadkins* Court went on to conclude that
the spousal privilege in Michigan is narrow in its
justification and ought to be correspondingly nar-
rowly construed in its scope.[9]

This narrowing of the justification for the statu-
tory spousal privilege was reinforced by this

---

[6] 398 Mich 250; 247 NW2d 547 (1976), *reh den* 399 Mich 1041 (1977).

[7] 101 Mich App 272; 300 NW2d 542 (1980).

[8] *Trammel v United States*, 445 US 40; 100 S Ct 906; 63 L Ed 2d 186 (1980).

[9] *Wadkins, supra*, p 283.

Court's decision in *People v Love*,[10] where the Court clearly stated that the Michigan statutory spousal privilege did not have a constitutional foundation. This leads to the conclusion in the within case that the violation of defendant's spousal privilege did not result in the admission of "illegal" evidence for purposes of the *Harrison* exception discussed above. The evidence was improper under a general marital harmony policy of state statutory law, but not "illegal" as an infringement of a basic constitutional right or as unreliable evidence which would deny defendant a fair trial.

In reality, in this case, the full disclosure of the wife's testimony leads to a "fairer" trial. In *Trammel v United Stated*,[11] the United States Supreme Court noted:

> "Testimonial exclusionary rules and privileges contravene the fundamental principle that ' " 'the public * * * has a right to every man's evidence.' " ' *United States v Bryan,* 339 US 323, 331; 70 S Ct 724; 94 L Ed 884 (1950). As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v United States,* 365 US 206, 234; 80 S Ct 1437; 4 L Ed 2d 1669 (1960) (Frankfurter, J., dissenting). Accord, *United States v Nixon,* 418 US 683, 709-710; 94 S Ct 3090; 41 L Ed 2d 1039 (1974)."

Thus, in this case, a reliable pursuit of the truth was actually furthered when the testimony of defendant's wife was admitted. Since the wife's testimony was "legal" evidence for purposes of *Harrison*, defendant's Fifth Amendment rights

---

[10] 127 Mich App 596, 601; 339 NW2d 493 (1983).

[11] *Trammel, supra,* pp 50-51.

were not violated when he was impelled to testify in response to its admission.

The second flaw in the admission of the wife's testimony, the failure of defense counsel to assert defendant's spousal privilege, was held to constitute ineffective assistance of counsel under the two-prong test of *Garcia, supra.* However, in light of recent United States Supreme Court decisions on this issue, the failure of defendant's counsel to assert the spousal privilege did not constitute a violation of defendant's Sixth Amendment right to effective assistance of counsel. In *United States v Cronic,*[12] the Court stated:

"In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."

Also, in *Strickland v Washington,*[13] a companion case to *Cronic,* the Court enunciated the two-step test to be applied in evaluating a defendant's claim that counsel's assistance was so defective as to require reversal:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. *This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.* Unless a defendant makes both show-

[12] 466 US 648, 658; 104 S Ct 2039; 80 L Ed 2d 657 (1984).
[13] 466 US 668, 687-693; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

ings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

* * *

"Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.

It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf. United States v Valenzuela-Bernal,* 458 US 858, 866-867; 102 S Ct 3440; 73 L Ed 2d 1193 (1982), *and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."* (Emphasis added.)

Counsel's error in the within case, which allowed admission of defendant's wife's testimony, constituted one of those errors that could have influenced the outcome but did not undermine the reliability of the result of the proceeding. This is due to the underlying nature of a violation of the spousal privilege which, as noted above, does not impair the reliability of the decision of the trier of fact. Thus, there was no violation of defendant's Sixth Amendment right to a fair trial and effective assistance of counsel in this case.

Therefore, legally, the only reason that admission of the evidence was improper is due to the Michigan *Garcia* doctrine of ineffective assistance of counsel. This Court has noted that the *Garcia* doctrine is different from the *Strickland* two-step test described above.[14] The *Garcia* two-prong test focuses on counsel's performance, not solely on the effect counsel's conduct has on defendant's right to a fair trial.

[14] *People v White,* 142 Mich App 581; 370 NW2d 405 (1985).

As in the analysis of evidence which is improper due to the statutory spousal privilege violation, this evidence, which was inadmissible due to a state-law ineffective assistance of counsel violation, is not "illegal" evidence for the *Harrison* exception based on the Fifth Amendment of the federal constitution. The evidence is not "illegal" as an infringement of a basis constitutional right or as unreliable evidence which would deny defendant a fair trial. Again, since the wife's testimony was "legal" evidence for purposes of *Harrison,* defendant's Fifth Amendment rights were not violated when (and if) he concluded that he was impelled to testify in response to its admission.

Also on appeal, defendant asserts that the trial court erred in failing to give cautionary jury instructions concerning the prosecutor's burden of disproving all reasonable theories of innocence when the prosecutor's case depended entirely upon circumstantial evidence.[15] This Court has required such a cautionary instruction only when the circumstantial evidence against a defendant is weak.[16]

The circumstantial evidence against defendant in this case was not weak. Defendant's own statements placed him at the scene of the murder. Defendant had previously threatened to kill the victim on more than one occasion. Although defendant claimed another man stabbed the victim, the pathologist testified that the victim had been stabbed with more than one weapon. The trial judge properly instructed the jury on the presumption of defendant's innocence and the prosecutor's burden of proof. In light of the strong circumstan-

---

[15] CJI 4:2:02(6) and (7).

[16] *People v Freeland,* 101 Mich App 501; 300 NW2d 616 (1980), *lv den* 417 Mich 963 (1983); *People v Seabrooks,* 135 Mich App 442, 454; 354 NW2d 374 (1984).

tial evidence presented against defendant, the trial
judge did not err in refusing to give a special
cautionary instruction concerning circumstantial
evidence.

Defendant also argues that the trial judge
abused her discretion in admitting evidence of his
prior assaults on the victim. Under MRE 404(b),
evidence of prior bad acts is not admissible to
prove a defendant's general character and disposi-
tion to commit a crime. However, MRE 404(b) also
provides that evidence of prior bad acts is admissi-
ble for the purpose of establishing a defendant's
motive or identity in committing the crime.

Despite defendant's arguments on appeal, it is
clear that defendant's denial of participation in
the killing placed his motive for killing the victim
in issue. Defendant's denials also placed his iden-
tity as a participant in issue. The evidence of
defendant's prior threats against the victim were
highly probative evidence of his motive and iden-
tity in the killing of the victim. The probative
value of such specific threats against the victim
certainly outweighs any prejudicial effect of ad-
mitting this evidence. Therefore, the trial judge
did not abuse her discretion in admitting the
evidence of defendant's prior assaults on the vic-
tim. Furthermore, the trial judge was not required
*sua sponte* to give a limiting instruction on the use
of this evidence.[17]

Defendant next argues that the prosecutor's
reference to his prior convictions in Cuba denied
him a fair trial. Prior to defendant's first trial, the
trial judge had ordered the suppression of evidence
of defendant's prior convictions in Cuba. However,
in conducting direct examination of defendant at
the first tiral, defense counsel asked defendant if

---

[17] *People v Morris,* 139 Mich App 550, 558; 362 NW2d 830 (1984);
*People v Chism,* 390 Mich 104, 120-121; 211 NW2d 193 (1973).

he had ever been convicted of a crime. Defendant answered "no". The prosecution later asked defendant if he had been referring only to "American crimes". Defendant did not respond to this question. This part of defendant's testimony was read at the second trial.

The granting of a motion to suppress evidence of a defendant's previous convictions is not a license for that defendant to affirmatively present himself before a jury as having a clean criminal record. Defendant's statement on direct examination that he had no prior criminal convictions opened the door to the prosecutor to present evidence to rebut this statement.[18] But, even if defendant had not opened the door to rebuttal evidence, the prosecutor's one, isolated question allowing a jury to infer the possibility of defendant's foreign convictions constituted harmless error under both tests set out in *People v Swan*.[19] Therefore, the prosecutor's fleeting remark, possibly allowing the jury to infer the existence of defendant's prior foreign convictions, even if it constituted error, did not deny defendant a fair trial.

Finally, defendant asserts that the trial judge erred at the sentencing proceedings by not disqualifying herself, by imposing a sentence under a mistaken view of the sentencing options open to her under the law, and by imposing a sentence which should shock the judicial conscience of this Court under *People v Coles*.[20] We find that defendant's arguments are without merit.

Defendant failed to make an actual showing of the trial judge's personal prejudice against him or his counsel as required for disqualification under

---

[18] See *People v Burse*, 62 Mich App 204; 233 NW2d 232 (1975).

[19] 56 Mich App 22, 31; 223 NW2d 346 (1974), *lv den* 395 Mich 810 (1975).

[20] 417 Mich 523; 339 NW2d 440 (1983).

GCR 1963, 912.2(a)(2), now MCR 2.003(B)(2).[21] The mere fact that the trial judge had presided at defendant's first trial does not establish personal bias under the court rule[22]

In reviewing the record of the sentencing proceedings, we note that the trial judge properly exercised her discretion in imposing sentence on defendant. Furthermore, a sentence of 75 to 150 years, in light of the facts of the brutal murder committed by defendant, does not shock the judicial conscience. Resentencing of defendant is not necessary.

Affirmed.

J. H. GILLIS, J., concurred.

M. J. KELLY, J. *(dissenting).* I dissent.

I agree that a defendant's testimony from a prior trial may generally be admitted at a subsequent trial for the same offense on the theory that once defendant has voluntarily waived his or her privilege against self-incrimination that waiver cannot be revoked in future proceedings in the same case. *Harrison v United States,* 392 US 219, 222; 88 S Ct 2008; 20 L Ed 2d 1047 (1968). The exception to this rule, as announced in *Harrison,* occurs where a defendant's testimony at the earlier proceeding was prompted or impelled by illegal evidence. *Id.* In determining whether testimony from a prior trial should be excluded at a subsequent trial under the exception announced in *Harrison,* this Court has, prior to today, focused on the reasons that prompted the defendant to testify in the first place.

In *People v Gardner,* 122 Mich App 20, 22-24; 329 NW2d 518 (1982), defendant's first conviction

---

[21] *People v Page,* 83 Mich App 412; 268 NW2d 666 (1978).
[22] *People v White,* 411 Mich 366, 386; 308 NW2d 128 (1981).

was reversed by this Court due to defense counsel's improper representation of both defendant and codefendant. At the second trial on remand, defendant did not testify but the prosecution was allowed to introduce defendant's testimony from the first trial as part of its case-in-chief. On defendant's second appeal, we affirmed his conviction on the ground that testimony from the first trial was not prompted by his first attorney's ineffective assistance in jointly representing codefendant but rather, was "an attempt to convince the jury that he was guilty" of a lesser crime than charged. We concluded that, because the ineffective assistance of counsel rendered in the first trial did not taint defendant's prior testimony, it was admissible at the second trial.

In *People v Thompson,* 97 Mich App 319, 321-323; 293 NW2d 812 (1980), the defendant's first conviction was reversed because of an instructional error. Again, defendant did not testify at the second trial but his testimony from the first trial was admitted as part of the prosecution's case-in-chief. On appeal, we found the *Harrison* exception inapplicable because "defendant's decision to testify at this first trial was motivated by the strength of the lawful evidence which had been presented by the prosecution rather than by the court's refusal to instruct on lesser offenses". 97 Mich App 322.

In my view, the instant case presents precisely the kind of situation alluded to but not presented in *Gardner* and *Thompson.* While I cannot say for certain what defendant's motives were in testifying at the first trial, it is obvious that his wife's testimony was by far the strongest evidence adduced against him. Guadalupe Armentero was the prosecution's chief witness; absent her testimony, the prosectuion's case was primarily circumstan-

tial and involved a credibility contest between defendant's statement to the police and the testimony of Arturo Aguilar. Given these circumstances, as well as the defendant's attempts to exclude Ms. Armentero's testimony on the basis of marital privilege, I am persuaded that defendant was motivated to testify at the first trial directly because of his wife's very damaging and improperly admitted testimony.

The majority holds that, although defendant's testimony may have been prompted by the introduction of his wife's testimony, which was improperly admitted, her testimony was "legal" and not "illegal" in the constitutional sense, and was only "technically inadmissible due to general policies of state statutory or common law". The majority thus holds that only where defendant's prior testimony is prompted by evidence *obtained* in violation of defendant's constitutional rights must it be excluded at a subsequent trial on the basis of *Harrison*.

I believe that the exception announced in *Harrison* should also apply where defendant's testimony is prompted by evidence *admitted* in contravention of his or her constitutional rights. It is anomalous that a defendant whose testimony is offered because of his attorney's ineffective assistance will be considered to have waived his constitutional right to remain silent if that attorney's ineffectiveness is rooted in statutory or common law rather than in constitutional law. In this case, Guadalupe Armentero's testimony at the first trial was admitted in violation of defendant's constitutional right to be represented by effective legal counsel. But for the violation of that constitutional right, Guadalupe Armentero's testimony would not have been admitted at the first trial and defendant presumably would not have testified. Since defendant's

testimony at the first trial was likely prompted or impelled by evidence admitted solely because of his attorney's ineffective representation, I would hold that the admission of portions of his testimony at the second trial requires reversal of his conviction.

The fact that the trial court excised much of defendant's former testimony so that what was admitted was consistent with defendant's police statement does not render the admission of the same testimony harmless. It is the testimony itself and the loss of defendant's constitutional right to remain silent that is at issue in this case. Moreover, defendant's statement to the police was relatively brief and did not include the detail provided by his former testimony, thus rendering the testimony more than merely cumulative. In fact, the prosecution relied extensively in closing argument on defendant's former testimony by contrasting it with the testimony of 11-year-old Arturo Aguilar and thus challenging its credibitlity.

I would reverse.