PEOPLE v DeWITT

Docket No. 97330. Submitted February 11, 1988, at Grand Rapids. Decided July 8, 1988.

Dennis DeWitt was convicted by a jury in Barry Circuit Court, Richard M. Shuster, J., of attempted second-degree murder and possession of a firearm in the commission of a felony. The convictions arose out of an incident in which gunshots were fired at an occupied mobile home which later exploded due to a leaking propane gas line. Defendant appealed.

The Court of Appeals *held:*

1. The admission of two statements made by defendant's estranged wife to one of the alleged victims after the incident, as related by that victim in her testimony at trial, was not precluded by either the spousal privilege or the marital communication privilege since those privileges only apply where a spouse testifies for or against the other spouse. Here, defendant's spouse was not a witness.

2. However, the admission of the statements under the excited utterance exception to the hearsay rule was error since the statements were not made before there was time to contrive or misrepresent, and the admission of the second statement on the additional basis of the exception for then-existing state of mind was also error since defendant's spouse's state of mind was not an issue at trial.

3. The trial court erred in admitting a statement made by an unknown declarant to one of the other victims on the day following the incident. The statement was not admissible under the present sense exception to the hearsay rule since it was not made while the declarant was perceiving the events to which the statement referred. Nor was the statement admissible

REFERENCES

Am Jur 2d, Criminal Law §§ 791 *et seq.*

Am Jur 2d, Evidence §§ 493 *et seq.,* 555, 650, 708, 722, 731.

Am Jur 2d, Trial §§ 682 *et seq.*

Am Jur 2d, Witnesses §§ 148 *et seq.*

The progeny of Miranda v Arizona in the Supreme Court. 46 L Ed 2d 903.

under the exception for then-existing state of mind since the declarant's state of mind was not at issue.

4. The statements described above incriminated defendant and their admission into evidence was not harmless error. Reversal of defendant's convictions is therefore required.

5. Contrary to defendant's claim, he was not entitled to *Miranda* warnings prior to his noncustodial interrogation, since those warnings are only required where a suspect is in custody.

6. Here, where the circumstantial evidence against defendant was strong, the jury need not have been, and correctly was not, instructed as to the prosecution's burden of disproving all reasonable theories of innocence.

Reversed.          .

1. WITNESSES — SPOUSAL PRIVILEGE.

The spousal privilege precludes examination of one spouse as a witness against the other without the permission of the nonwitness spouse; the privilege can be asserted only while the spouses are legally married and precludes testimony regardless of whether the events at issue occurred before or during the marriage (MCL 600.2162; MSA 27A.2162).

2. WITNESSES — MARITAL COMMUNICATIONS.

A spouse may not be examined, during or after the marriage, as to any communications made by one to the other during the marriage without the consent of both (MCL 600.2162; MSA 27A.2162).

3. EVIDENCE — HEARSAY — EXCITED UTTERANCE — RULES OF EVIDENCE.

A statement, in order to be admissible under the excited utterance exception to the hearsay rule, must (1) arise out of a startling event, (2) be made before there has been time for contrivance or misrepresentation, and (3) relate to the circumstances of the startling event; additionally, the declarant of the statement must appear to have had an opportunity to personally observe the matter of which he speaks (MRE 803[2]).

4. EVIDENCE — HEARSAY — STATE-OF-MIND EXCEPTION — RULES OF EVIDENCE.

Evidence of a declarant's state of mind is admissible under the state-of-mind exception to the hearsay rule only when the declarant's state of mind is an issue in the case (MRE 803[3]).

5. CRIMINAL LAW — CONSTITUTIONAL LAW — *MIRANDA* WARNINGS.

Warnings required under *Miranda v Arizona,* 384 US 436 (1966), must be given prior to questioning when a person is in custody

or otherwise deprived of freedom of action in any significant way, not at the time a person becomes the focus of an investigation.

6. CRIMINAL LAW — JURY INSTRUCTIONS — CIRCUMSTANTIAL EVIDENCE.

A cautionary jury instruction concerning the prosecution's burden of disproving all reasonable theories of innocence when the prosecution's case depends entirely upon circumstantial evidence is necessary only when the circumstantial evidence against the defendant is weak (CJI 4:2:02[6], [7]).

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, *Judy A. H. Hughes*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

*Smiley & Holst* (by *Richard D. Holst*), for defendant on appeal.

Before: CYNAR, P.J., and WEAVER and R. M. PAJTAS,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of attempted second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to life imprisonment for the attempted murder conviction and a mandatory consecutive two-year term for the felony-firearm conviction. Defendant appeals as of right. We reverse and remand for a new trial.

Defendant's convictions arose out of a shooting into an occupied mobile home on the evening of January 6, 1986, in Barry County. No one was injured from the shooting. However, approximately forty-five minutes after the shots were fired, the mobile home exploded due to a ruptured propane gas line.

* Circuit judge, sitting on the Court of Appeals by assignment.

Victor Kelly, also known as Duane Dye, testified that he has known defendant's estranged wife, Roxanne DeWitt, for about ten years. He knew that defendant and Roxanne had been separated for about six months. The night before the shooting, Duane spent the night with Roxanne at Cindy Gibson's rented trailer which was located south of Hastings, Michigan. On the evening of the shooting, Duane, his brother Rodney, Rodney's girlfriend, Cindy, Cindy's baby and Scott Hulse were in the trailer kitchen playing cards. Rodney left for work at about 10:20 P.M.

After Rodney left, Duane heard shots or firecracker sounds from outside the trailer. Twenty minutes later, he saw headlights coming down the road. He opened the bedroom window and saw a blue Buick with a light top. There were several people in the car. Five minutes later, bullets began coming through the trailer walls. Glass from the china cabinet and television shattered as bullets hit the trailer. As soon as the shooting stopped, Duane telephoned the police, Roxanne and his mother, Karen L. Dye. He saw that there was a gas leak and told everyone to get out of the trailer. He then shut off the main valve at the propane tank.

When the police officers arrived, he showed them the areas inside the trailer where the bullets had struck. The officers told him to take the plastic off of the windows to ventilate the trailer. As the officers walked out, the trailer exploded. Duane and Karen were injured as a result of the explosion.

Karen, testified that she has known Roxanne for approximately fourteen years. She saw Roxanne with Duane a number of times in December, 1985. On January 6, 1986, at about 11:00 P.M., she received a call from Duane, who was extremely

excited. He told her that someone had shot at the trailer and asked her to come and pick up Cindy and the baby. When Karen arrived at the trailer, she received a telephone call from Roxanne. Roxanne's voice was shaky and excited. Roxanne told Karen to tell Duane: "They're out to get him." Karen gave the phone to Duane who told Roxanne: "They've already been here and shot the place up."

The morning following the explosion of the trailer, Rodney saw a black Chrysler Laser approach and a passenger yelled, "that's what you get, you son of a bitch, for fucking somebody else's old lady." Defendant objected to the introduction of this statement. His objection was overruled.

Defendant presented an alibi defense. He claimed that, on the evening of the shooting, he and some friends went to a bar to play a game of pool. They returned about 10:45 P.M. and he went home. Defendant denied any involvement in the shooting.

Following his convictions, defendant filed the instant appeal raising five issues, two of which we find meritorious and dispositive.

First, defendant alleges that the trial court erred in admitting statements made by defendant's wife, Roxanne, to a third person on the basis that these statements were privileged or constituted hearsay not within any exception. There are two different conversations. The first took place when Roxanne spoke on the telephone with Karen shortly after the shooting. The second occurred the following day when Roxanne called Karen at the hospital. Defendant claims that these conversations fall within the marital privilege and, thus, should have been excluded. We disagree.

The marital privilege is codified in MCL

600.2162; MSA 27A.2162, which, in pertinent part, provides:

> A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent, . . . nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage . . . .

The statute codified the common-law spousal privilege and the confidential-communication privilege. The spousal privilege precludes spousal testimony. The privilege can be asserted only while the spouses are legally married. It precludes all testimony regardless of whether the events at issue occurred before or during the marriage. *People v Love,* 425 Mich 691, 696; 391 NW2d 738 (1986).

The communication privilege applies to confidential communications made within the marital relationship irrespective of the marital status of the parties at the time of trial. *People v Wadkins,* 101 Mich App 272, 282; 300 NW2d 542 (1980); *People v Stubli,* 163 Mich App 376, 380; 413 NW2d 804 (1987). This privilege requires the consent of both parties.

In this case, the marital privilege is inapplicable because defendant's wife did not testify. Her statements were introduced through a third party. The statute clearly states that neither spouse may be "examined as a witness" against the other spouse, implying that either spouse must testify. Therefore, the privilege does not apply.

Although the privilege is inapplicable, we hold that these statements should have been excluded since they constituted hearsay not falling within any exception. Hearsay is an out-of-court state-

ment offered to prove the truth of the matter asserted. MRE 801(c). Hearsay evidence is inadmissible unless it falls within a recognized exception to the rule. MRE 802. The statements made by Roxanne and Duane, as testified to by Karen, constituted hearsay, since they were made out of court and were offered to prove the truth of the matters asserted.

The trial court permitted Karen to testify as to what Roxanne told her, finding that the statement was an excited utterance as defined in MRE 803(2). The Supreme Court, in *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979), set forth three criteria which must be met before a statement can be admitted into evidence as an excited utterance: (1) the statement must arise from a startling event; (2) it must be made before there has been time for contrivance or misrepresentation; and (3) it must relate to the circumstances of the startling event. See also *People v Foreman,* 161 Mich App 14, 20; 410 NW2d 289 (1987). In addition, a panel of this Court, in *People v Kent,* 157 Mich App 780, 788; 404 NW2d 668 (1987), held that one of the requirements for the admission of an excited utterance is that the declarant appear to have had an opportunity to personally observe the matter of which he or she speaks.

We find that the trial court erred in allowing Karen to testify regarding her and Roxanne's first telephone conversation. While the testimony related a startling event, Roxanne's statements were not made before there was time to contrive or misrepresent since Roxanne's call came sometime after the time that she had been called by Duane. Arguably, Roxanne and Duane had the opportunity to contrive the entire story. Thus, Roxanne's statements should have been excluded since they were inadmissible hearsay.

The second conversation took place some eight hours after the trailer explosion. Karen, who went to the hospital for treatment of injuries, received a call from Roxanne. Roxanne told Karen "not to hold it against me" for what Dennis had done. However, at trial, defendant's name was not mentioned. It only appeared on the separate record made out of the presence of the jury. The prosecution offered this statement as being an excited utterance, and a statement regarding a then existing mental, emotional or physical condition as provided in MRE 803(3). The trial judge admitted this statement under the latter exception.

The general rule in Michigan is that statements indicative of the declarant's state of mind are admissible when state of mind is an issue in the case. *People v White,* 401 Mich 482, 502-503; 257 NW2d 912 (1977); *People v Furman,* 158 Mich App 302, 315; 404 NW2d 246 (1987), lv den 429 Mich 851 (1987).

In this case, even if we assume that Roxanne's statements qualify as an expression of her state of mind, her state of mind was simply not at issue in the case. Thus, it was error to permit these statements into evidence.

In addition, we agree with defendant that it was error to permit Rodney to testify to a statement made by an unknown declarant the morning following the explosion. The statement was:

> *A.* He yelled, that's what you get, you son of a bitch, for fucking somebody else's old lady.

The statement was admitted as being a present sense impression, MRE 803(1), and a statement regarding a then existing mental, emotional or physical condition, MRE 803(3). A present sense impression is a "statement describing or explain-

ing an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." MRE 803(1). In this case, this exception does not apply. The statement was not made while the declarant witnessed either the trailer explosion or sexual intercourse by anyone. The time element was long enough between the explosion and the statement so that the declarant was not perceiving the event or condition when the statement was made.

In addition, the statement does not qualify under MRE 803(3) since the unknown declarant's state of mind was not at issue. *White, supra.*

We also find that admission of these hearsay statements was not harmless error. They contributed to defendant's convictions since defendant's guilt was entirely based on circumstantial evidence. These statements tended to tip the scales toward finding defendant guilty since they established defendant's motive for allegedly shooting at the trailer and they implicated defendant in the shooting. Therefore, defendant's convictions are reversed.

As to defendant's remaining issues, we find no merit. Defendant claims that he should have been given the *Miranda*[1] warnings, both on the night of the shooting and the following morning since he had become the "focus" of the investigation. We disagree. Recently, in *People v Hill,* 429 Mich 382, 384; 415 NW2d 193 (1987), our Supreme Court held that *Miranda* warnings must be given only when the defendant is in custody or otherwise deprived of his freedom of action in any significant way. Our review of the circumstances surrounding the objected-to interrogation indicates that defen-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

dant was not in custody. He had the freedom to return to his apartment. Thus, we find no error.

Defendant also claims that CJI 4:2:02(6) and (7) should have been given to the jury since the entire case was primarily comprised of circumstantial evidence. CJI 4:2:02(6) and (7) provide:

> (6) [Circumstantial evidence alone may be used to prove an element of an offense, but the prosecution has the burden of disproving any reasonable theory of innocence which is presented by the circumstances.]
>
> (7) If the direct and circumstantial evidence, taken together, is open to two reasonable constructions, one indicating guilt and the other innocence, it is your duty to accept the construction indicating innocence.

The criminal jury instructions specifically state that paragraph six is optional. That is why the instruction is in brackets. In *People v Armentero,* 148 Mich App 120, 132; 384 NW2d 98 (1986), lv den 425 Mich 883 (1986), this Court held that the cautionary instruction is required only when the circumstantial evidence against a defendant is weak. Our review of the evidence indicates that the circumstantial evidence was strong, especially the shotgun shell which fell from defendant's coat and matched other shells found at the trailer. Thus, it was unnecessary to issue the cautionary instruction. Hence, we find no error.

Finally, we decline to address defendant's sentencing issue since we are reversing defendant's convictions.

Reversed.