*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SEAN ANTHONY SINGLETON,

Defendant-Appellant.

UNPUBLISHED
January 26, 2023

No. 359461
Macomb Circuit Court
LC No. 2021-000531-FH

Before: HOOD, P.J., and CAMERON and GARRETT, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for third-degree home invasion, MCL 750.110a(4); assault and battery, MCL 750.81(1); and malicious destruction of property ($200 or more but less than $1,000), MCL 750.337a(1)(c)(*i*). The trial court sentenced him to 18 months' probation on each conviction. We affirm.

## I. BACKGROUND

Singleton's convictions arise from an early November 2020 home invasion at the home of Jamie Zack. Singleton and Zack previously dated and lived together. They also share a young child. After Singleton and Zack broke up, they shared joint custody of the child with equal parenting time, and Zack moved into her own home. Singleton and Zack communicated over the telephone and through text messages to discuss the child's care, and they each exercised parenting time at their respective homes. Zack dropped off the child at Singleton's house for some exchanges, but Singleton also occasionally picked up the child from Zack's house. Singleton also assisted Zack with various tasks around her house, such as lawn mowing, and sometimes helped Zack's mother at the house when Zack was gone. Zack estimated that Singleton had visited her home for various purposes approximately 15 times from July 2020, when she moved in, until the incident at issue in November 2020.

A key issue here is the status of Singleton's permission to enter Zack's home. According to Zack, when Singleton came to her house, he knocked at the door, called, or texted to indicate his arrival, and she would let him in. Zack denied there being an open invitation for Singleton to come in unannounced. She testified that whenever Singleton was inside her home, she had actively

invited him to enter. Zack maintained that, when she was home, she always actively let Singleton inside. If she was away when Singleton helped her mother, he would otherwise confirm his ability to enter Zack's home with Zack over the telephone in advance. According to Singleton, however, he had implied permission to enter Zack's home for these visits. He also explicitly stated that Zack's testimony, that she always actively invited him inside or responded over the telephone, was false.

On the day of the incident at issue, Zack was at home with their child during her parenting time. Zack testified that she had arranged with Singleton for him to watch the child when she went to work that evening, but that the two never made any specific plan for exchanging the child. Zack also testified that Singleton's telephone went directly to voicemail when she called him to schedule the exchange, so she planned to drop off the child at Singleton's home around 9:45 p.m., on her way to work. Zack acknowledged that Singleton similarly tried to reach her by telephone at some point, but they failed to connect.

Zack also testified that sometime later in the evening, with the child still present, Matthew Stroud visited to perform some handiwork at her house. According to Zack, Stroud, who owns a construction company, was helping her remodel parts of her home. Zack acknowledged having known Stroud for about 10 years and described him as a friend.

Zack testified that she was speaking with Stroud at the kitchen table when, shortly after Stroud's arrival, Singleton unexpectedly walked through the door. Zack described herself as shocked at Singleton's entry because she never heard from him earlier. Zack stressed that at no point did she give Singleton permission to enter her home that day. When Singleton entered, he looked at Stroud, asked what he was doing in Zack's home, and hit Stroud in the head. The attack moved to Zack's garage, and Zack testified that Singleton pushed her multiple times as he attacked Stroud and she tried to separate them. Zack said Stroud was frightened, did not try to fight back, and eventually was able to get in his car to leave. At this point, Singleton allegedly went back inside Zack's home, and Zack followed. According to Zack, Stroud returned to grab his cellular telephone he had left in the kitchen, but Singleton threw the telephone on the ground, causing it to break.[1] Zack said that Stroud then left, but Singleton remained inside her home, grabbed the child, and started yelling at Zack.

Singleton's account of the incident differed from that of Zack. He testified that he and Zack had agreed for him to pick up the child at Zack's home that evening, and that his arrival should not have been a surprise. Singleton testified that he called Zack on his way to her house to give additional notice of his arrival, but her telephone went straight to voicemail. Singleton acknowledged that his cellular telephone was dead for an unspecified amount of time that day.

Singleton testified that when he arrived at Zack's house, he saw Stroud's truck and was "kind of shocked." Singleton explained that Zack and Stroud were romantically involved at various points during his relationship with Zack, which, according to Singleton, led to their separation. Singleton allegedly "knocked on the door and said, hello," and walked inside.

---

[1] Stroud estimated that his cellular telephone broken by Singleton was worth approximately $800. Stroud also testified that he paid a deductible of $250 to obtain a new cellular telephone.

Singleton admitted he made a vulgar statement upon entering Zack's home, but testified that this was directed at Zack, not Stroud. Singleton testified that Stroud initiated the physical confrontation, with Singleton simply engaging in self-defense. Singleton also denied pushing Zack during the fight with Stroud, or ever touching, let alone breaking, Stroud's cellular telephone.

Following this incident, Singleton called the police to "get a statement that [Stroud] was there [in violation of a custody order] and [that] I was assaulted as I came to pick up my daughter." At trial, Singleton confirmed reporting to the 911 operator that this incident was the third time in a week Zack had been around men in violation of the custody order between Singleton and Zack, explaining that he "came over there two other times prior th[at] week and [Zack] had guys [at her home]." When police arrived at Zack's home, officers took statements from Singleton and Zack, and Singleton was arrested.

The prosecution charged Singleton with one count of third-degree home invasion, one count of domestic violence, MCL 750.81(2), one count of assault and battery, and one count of malicious destruction of property. At trial, the jury found Singleton guilty of third-degree home invasion, assault and battery, and malicious destruction of property, but not guilty of domestic violence. This appeal followed.

## II. LAW AND ANALYSIS

### A. JURY INSTRUCTIONS

Defendant first argues that his conviction for third-degree home invasion should be reversed because he was prejudiced by the trial court's error in the jury instructions. We disagree and conclude that Singleton has waived any claim of instructional error.

We review de novo issues of law arising from jury instructions. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). But we review for an abuse of discretion a trial court's determination whether an instruction was applicable to the facts of the case. *Id*. A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

In relevant part, third-degree home invasion is established when a person

> [b]reaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor. [*People v Jackson (On Reconsideration)*, 313 Mich App 409, 422; 884 NW2d 297 (2015), quoting MCL 750.110(4)(a) (emphasis omitted).]

Therefore, the prosecution here essentially had to prove two elements: (1) that Singleton entered Zack's home without permission and (2) committed one or more misdemeanors therein. See *id*.; M Crim JI 25.2e.

Singleton specifically challenges the following instruction to jurors:

-3-

Second, that when the defendant entered, was present in, or was leaving the dwelling, he committed assault, *or* assault and battery, *or* domestic violence *or* malicious destruction of personal property $200 or more but less than $1,000. To satisfy this second element *the jury does not have to unanimously find beyond a reasonable doubt that the defendant committed the same crime, only that all agree beyond a reasonable doubt that the defendant committed at least one of the crimes* of assault or assault and battery or domestic violence or malicious destruction of personal property $200 or more but less than $1,000.

Singleton notes that the emphasized language is not included in the standard jury instructions for third-degree home invasion, and he claims that its inclusion potentially misled the jury on the applicable standard of proof. According to Singleton, "the idea that the jury does not have to agree on a particular misdemeanor . . . could easily confuse the jury such that it would think that the prosecutor's burden of proof of guilt beyond a reasonable doubt does not apply to all the crimes that the defendant is accused of committing."

Singleton, however, waived any claim of instructional error. Forfeiture and waiver are two distinct principles. Forfeiture is the "failure to make the timely assertion of a right," *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted), whereas waiver is "the intentional relinquishment or abandonment of a known right," *Kowalski*, 489 Mich at 503 (quotation marks and citation omitted). "The failure to object . . . qualifies as forfeiture and is reviewable for plain error." See *People v Hershey*, 303 Mich App 330, 349; 884 NW2d 127 (2013) (involving an objection to a sentencing guidelines enhancement). "When defense counsel clearly expresses satisfaction with a trial court's decision," however, "counsel's action will be deemed to constitute a waiver." *Kowalski*, 489 Mich at 503 (citation omitted). Forfeiture does not extinguish an error. *Carter*, 462 Mich at 215. But express approval of the jury instructions waives appellate review of a claim of instructional error and there is no error to review. See *Kowalski*, 489 Mich at 504; *Carter*, 462 Mich at 215 ("One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.") (Quotation marks and citations omitted).

Before the parties' closing arguments, the prosecution requested that the jury instruction regarding the second element of third-degree home invasion, which requires commission of or intent to commit a misdemeanor in the subject dwelling, include language that the jury need not be unanimous about which misdemeanor was committed. The trial court agreed to provide such an instruction. It clarified, however, that, while jurors need not be unanimous regarding which underlying misdemeanor satisfied the second element of third-degree home invasion, they still had to unanimously conclude beyond a reasonable doubt that Singleton committed at least one misdemeanor.

Singleton's trial counsel expressed some initial concern. He stated: "I don't like it that there's any suggestion that something does not have to be proof beyond a reasonable doubt, because that might be misconstrued and there might be some contagion into other areas of the instruction." He stated, however, that it was "okay to have some of the jurors agree to assault and battery, some of the jurors agree to the domestic violence and some of the jurors agree to malicious destruction of property." When the trial court provided its proposed instruction—which mirrors the instruction ultimately read to the jury—trial counsel confirmed that the proposed instruction

satisfied his concerns. Trial counsel, therefore, expressly approved the jury instruction Singleton now challenges on appeal. Accordingly, Singleton's instructional error claim is waived and there is no error to review. See *Kowalski*, 489 Mich at 504.

## B. GREAT WEIGHT OF THE EVIDENCE

Singleton also argues that his conviction for third-degree home invasion should be reversed because it was against the great weight of the evidence. We disagree.

Generally, this Court reviews a great-weight challenge by deciding whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 616-617; 806 NW2d 371 (2011) (quotation marks and citation omitted). Defendant, however, failed to preserve this issue for review by moving for a new trial below. *Id*. at 617. Unpreserved claims that a jury verdict was against the great weight of the evidence are reviewed for plain error affecting a defendant's substantial rights. *Cameron*, 291 Mich App at 617-618. To avoid forfeiture under the plain-error standard, "the defendant bears the burden to show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the lower court proceedings." *Id*. at 618, citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764 (quotation marks, citation, and brackets omitted).

Absent exceptional circumstances, however, a reviewing court may not substitute its view of the credibility of witnesses for that of the jury. *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998). Exceptions include when the testimony "contradicts indisputable physical facts or laws," is "patently incredible," "defies physical realities," is so "implausible that it could not be believed by a reasonable juror," or was so far impeached that it was deprived of all probative value. *Id*. at 643-644 (quotation marks and citations omitted). Nevertheless, when the question is one of "credibility posed by diametrically opposed versions of the events in question," the test of credibility must be left with the trier of fact. *Id*. at 646-647. "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "The hurdle that a judge must clear in order to overrule a jury and grant a new trial is unquestionably among the highest in our law." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008) (quotation marks and citation omitted).

As stated earlier, the prosecution had to prove beyond a reasonable doubt that Singleton (1) entered Zack's home without permission and (2) committed one or more misdemeanors therein. See *Jackson (On Reconsideration)*, 313 Mich App at 422; M Crim JI 25.2e.

Singleton argues that his third-degree home invasion conviction was made against the great weight of the evidence because, as supported by his and Zack's trial testimony, he had standing permission to enter the dwelling at issue. Singleton asserts that "[t]here was just too much background and history between [him and Zack] for this case to be fairly viewed as a home

invasion." Singleton notes that he and Zack had a long-standing coparenting schedule "that involved numerous comings and goings between their residences." Accordingly, Singleton argues that he was a regular visitor with implied permission to enter Zack's home. Emphasizing in particular his own testimony of regularly visiting Zack's home for various purposes and Zack's admission of his regular visits, Singleton asserts that the evidence "all points in the wrong direction for home invasion" and "weigh[s] heavily in favor of acquittal."

Singleton's conviction for third-degree home invasion was not against the great weight of the evidence. Although Singleton testified that he had permission to enter Zack's home both generally and on the date in question, Zack testified to the contrary. Zack acknowledged that Singleton had visited her home on various occasions to exchange the child and for other purposes. Throughout her testimony, however, Zack maintained that she always granted Singleton permission before he entered her home for these visits. She also maintained that, on the day of the incident, she never granted Singleton permission to enter her home. Accordingly, Singleton's contention that all the evidence favors acquittal is inaccurate. Given the conflicting testimony on this issue and the jury's role in assessing witness credibility, its guilty verdict on third-degree home invasion was not against the great weight of the evidence. *Lemmon*, 456 Mich at 646-647.

## C. PROSECUTORIAL MISCONDUCT

Singleton further argues that his conviction for third-degree home invasion should be reversed because the trial prosecutor committed misconduct in her closing argument to the jury. We disagree.

Claims of prosecutorial misconduct generally require showing that the defendant was denied a fair and impartial trial. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). Defendants are "entitled to a fair trial, not a perfect one," and this Court must review the alleged misconduct in context. *Id*. (citations omitted). To preserve a claim of prosecutorial misconduct for appeal, a defendant must contemporaneously object and request a curative instruction. *Id*. (citation omitted). Singleton did not object to or request a curative instruction regarding the prosecutor's statement now challenged on appeal, so the issue is unpreserved. See *id*. For unpreserved claims of prosecutorial misconduct, review is limited to plain error affecting the defendant's substantial rights. *Id*. at 201-202.

During closing arguments, the trial prosecutor, when discussing Singleton's credibility, stated:

> [T]hat's where you need to look and see did the defendant seem to be telling the truth when he was testifying or did he seem to be trying to paint himself in the best light? Did [Zack] try to paint herself in the best light, or did she concede that, yes, I had [Stroud] in my house on November 6th? Nobody asked her about earlier that week, and I would submit to you that nobody asked her about earlier that week because the defendant was essentially stalking her[;] he's not on trial for that, but does that explain his behavior?

Singleton argues that the trial prosecutor committed misconduct by telling the jury that Singleton was "essentially stalking" Zack. Noting that stalking is a specific offense in Michigan,

Singleton asserts that the prosecutor's statement was deliberately false and intended to discredit Singleton in front of the jury. Singleton, therefore, argues that because the testimony from both sides regarding whether he had permission to "come and go" at Zack's house was critical to determining his innocence or guilt, "the prosecutor's attempt to tip the scales by telling the jury he is an outright criminal stalker denied him a fair trial . . . ."

The prosecutor's statement did not deny Singleton a fair and impartial trial.[2] The trial prosecutor did not imply that Singleton committed the crime of stalking and made it clear that Singleton was never charged with that offense. Instead, the prosecutor simply explained the circumstances of Singleton and Zack's relationship and previous interactions that were relevant to the credibility of the testimony at trial. Regardless, the challenged statement was sufficiently supported as a reasonable inference from the available evidence—specifically, Singleton's 911 call when he indicated having seen Zack with different men numerous times in the week before the incident in question. See *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001) ("Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence.").

Regardless, a prosecutor's isolated statement, like that at issue here, is subject to harmless error[3] analysis even if improper. *People v Armentero*, 148 Mich App 120, 134; 384 NW2d 98 (1986).[4] Here, there was conflicting testimony on the key issues to allow reasonable jurors, subject to their determinations of witness credibility, to convict Singleton on third-degree home invasion. And the trial court's instruction to the jury, that the attorneys' statements were not evidence, alleviated any potential prejudice to Singleton. See *Unger*, 278 Mich App at 237 (indicating that jurors are presumed to follow their instructions and a timely objection and curative instruction alleviates prejudicial effect of improper statements). Accordingly, any error in the prosecutor's statements was harmless.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

---

[2] Although Singleton has arguably abandoned the issue because he failed to cite authority supporting his argument for this issue (except a general statement regarding prosecutorial misconduct), and provided minimal substantive argument, see *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998), we address the issue.

[3] Our Supreme Court recently stated, "The harmless-error and plain-error standards require the same kind of inquiry[] because they both require appellate courts to assess the effect of the error on the outcome of the trial court proceedings." *People v Davis*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 161396); slip op at 16 (quotation marks and citation omitted). Accordingly, we cite to cases evaluating prejudice under harmless error as helpful in whether Singleton was prejudiced under plain-error review here.

[4] Although *Armentero* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2).

Finally, Singleton argues that his conviction for third-degree home invasion should be reversed because his trial counsel rendered ineffective assistance. We disagree.

Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Findings of fact are reviewed for clear error, and questions of law are reviewed de novo. *Id.* "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Abcumby-Blair*, 335 Mich App 210, 227-228: 966 NW2d 437 (2020) (quotation marks and citation omitted). This issue is unpreserved, however, because defendant never moved in the trial court for a new trial or a *Ginther*[5] hearing, nor did he file a motion to remand in this Court. See *Abcumby-Blair*, 335 Mich App at 227. This Court's review of unpreserved ineffective assistance claims is "limited to mistakes apparent from the record." *Heft*, 299 Mich App at 80.

To show ineffective assistance of counsel, a defendant must prove (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defendant. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Trial counsel's performance is deficient when it falls below "objective standard of reasonableness under prevailing professional norms." *Abcumby-Blair*, 335 Mich App at 228. Furthermore, "[p]rejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (quotation marks and citation omitted).

Trial counsel's performance is presumed to be effective, and a defendant must also overcome a presumption that any challenged action could be considered sound trial strategy. *People v Masroor*, 313 Mich App 358, 368; 880 NW2d 812 (2015), rev'd in part on other grounds by *People v Steanhouse*, 500 Mich 453 (2017), vacated on other grounds by *People v Steanhouse*, 504 Mich 969 (2019) ("Counsel enjoys great latitude in matters of trial strategy and tactics. That a defense strategy ultimately fails does not establish ineffective assistance of counsel.") (citation omitted). Finally, a defendant bears the burden of establishing the factual basis of his ineffective assistance claims. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Here, Singleton argues that his trial counsel rendered ineffective assistance by failing to object to and request a curative instruction regarding the trial prosecutor's comment that Singleton was "essentially stalking" Zack.[6] Singleton argues that these failures were both deficient and unreasonable, and that the unchallenged statement so impaired his credibility that there is a reasonable probability he would not have been convicted otherwise.

Given our earlier conclusion that the trial prosecutor's statement now challenged on appeal was not improper, Singleton's claim of ineffective assistance must fail. See *Chelmicki*, 305 Mich App at 68 ("[I]t necessarily follows that [the] defendant's claim of ineffective assistance of counsel

---

[5] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[6] Singleton does not argue that trial counsel's agreement with the unanimity instruction constituted ineffective assistance of counsel. That issue is not presently before us.

must fail because defense counsel is not required to make a meritless request or objection."). Regardless, Singleton fails to overcome the presumption that his trial counsel was effective and that the decision not to object or request a curative instruction was a matter of sound trial strategy. In particular, Singleton provides no factual explanation or supporting authority regarding why his counsel's failure to act here was deficient. And it may have been trial strategy for trial counsel to decline to object to the prosecutor's statements, instead choosing to move and not draw attention to them. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) ("Certainly there are times when it is better not to object and draw attention to an improper comment."). Regardless, with this Court's review limited to errors apparent from the trial court record, see *Heft*, 299 Mich App at 80, we cannot determine trial counsel's reason for failing to object or request a curative instruction and have no facts to overcome the presumption that trial counsel's failure to act was consistent with sound trial strategy.

Lastly, as discussed earlier, Singleton was not prejudiced by the prosecutor's statement, so he could not be prejudiced by his trial counsel's failure to object to it. We acknowledge that "a finding that a defendant failed to satisfy the [plain-error] prejudice prong when complaining about an error by the court will not necessarily mean that the defendant is unable to prevail on an ineffective-assistance claim relating to the same underlying issue." *Randolph*, 502 Mich at 14. But this is because such distinct, though related, claims often involve separate record evidence to be evaluated on appeal:

> [T]he record on which the claims are assessed will typically be different. An appellate court need not look beyond the trial court record when reviewing a trial court's mistake for plain error . . . .
>
> By contrast, the errors underlying ineffective-assistance claims often are not apparent from the trial record but instead require additional evidentiary development. This is because ineffective-assistance claims center on deficiencies in the defense counsel's decision-making, which will not always reveal themselves in the official record. [*Randolph*, 502 Mich at 14.]

As noted earlier, Singleton never pursued a *Ginther* hearing. Review of both his ineffective-assistance claim and the underlying claim of prosecutorial misconduct is, therefore, based on the same factual record. This alleviates the need, as stated in *Randolph*, to distinguish between the prejudice necessary for plain error affecting substantial rights versus that for ineffective assistance. Further, we disagree with Singleton that an objection or request for a curative instruction, given the impact on his credibility from the prosecutor's statement, would with any reasonable likelihood have changed the outcome of this case. The prosecutor's statement was simply an isolated comment properly related to Singleton's credibility—a statement which the trial court critically instructed is not actually evidence for jurors to consider.

We affirm.

/s/ Noah P. Hood
/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett